CHARLES WALL, ET. AL., APPELLANTS, v. THE HOME IN-
SURANCE COMPANY, RESPONDENT.

*Policy of Insurance—Non-payment of Note for premium—When void.*

A condition in a policy that if the note given for the premium is not paid at maturity, the policy shall be void, is a valid and binding one, and the note being dishonored, the policy thereby becomes void.

*J. M. Van Cott* for Appellants.
*W. A. Butler* for Respondent.

HUNT J.—The defence in this case arises upon the following clause of the policy: "In case the note or obligation given for the premium herefor, be not paid at maturity, the full amount of premium shall be considered as earned, and this policy become void, while said note or obligation remains overdue and unpaid." The premium to be paid by the assured was not required to be paid in cash. Instead thereof it was agreed that the assured could give his note therefor, payable at the expiration of four months. This was a waiver of prepayment, which the parties had a perfect right to make. They added, however, to this waiver, a condition, that if the note was not paid at maturity, the full amount of the premium should be considered as earned. I understand this to mean, that the duty of indemnity on the part of the insurers should thereupon cease ; that they had earned all the premium agreed to be paid, and as there was no further compensation to be paid by the assured, no further indemnity from the insurers was expected. The condition further provided, that while the note remained overdue and unpaid, the policy should become void. This was a reiteration and enlargement of the same idea.

This note matured on the 20th of September, was protested and remained unpaid. On the 9th of October the vessel insured was lost. On the 20th of October the Plaintiff, being advised of the loss, of which the Defendants were ignorant, offered to pay the amount of the note, which offer was declined, and the note

yet remains unpaid. There was thus a clear breach of a valid condition, and by the terms of the contract the obligation of the insurer was at an end, before and at the time of the occurrence of the loss; the note, however, remaining of full force and effect (Beadle *v.* Chenango County M. Ins. Co., 3 Hill, 161; Neely *v.* Onondaga M. Ins. Co., 7 Hill, 49; Smith *v.* Saratoga M. Ins. Co., 3 Hill, 508).

On the trial the Plaintiff claimed that this condition of the policy had been waived by the Defendants, through the action of their agent, D. C. Dobbins, and asked to be allowed to go to the jury on that question. The Court held that there was no evidence upon the point for the jury, and nonsuited the Plaintiff. The evidence of Elijah K. Bruce is relied upon to sustain the claim of waiver. He testified as follows: " I saw him (Dobbins) at the corner of the Merchants' Exchange; he said the note could lie over a few days without any prejudice to the policy; not exactly those words; he said the note would be all right to lie over; he said his company would as soon have the interest as the money. He had said that to me before, in other cases. I said to him, the endorsers are perfectly good. He said he knew that." On his cross-examination, he says this was within a day or two of the maturity of the note, and in answer to the question, " Give the jury the precise language," he says, " I told him I wanted him to wait till the Zenobia came home for payment of that note; I referred to the note; I told him the note was perfectly good; he said he knew that." " Have you stated all that was said?" " As nearly as I can recollect." William Moore was examined on commission, and testified that, a few days after the maturity of the note, he had a conversation with Mr. Dobbins in relation to it. " State what he said about this note." " I believe I introduced the subject by asking why he did not renew the note for Bruce, as the endorser was good. He said it was good enough the way it was, the ' way ' or ' shape,' or some such expression. That is about all the conversation we had in relation to it." " Can you state whether he used the expression: ' It is just as well for everybody as it is,' or any equivalent expression?" " It seems to me he did

make use of that expression ; come to think it over, I feel pretty confident he made use of that expression." On his cross-examination he says : " I asked him why he did not extend it, as the parties were perfectly good who endorsed it." " When you stated, on your direct examination, that he said it was good enough, the ' way' or ' shape' it was, did you mean to say that he used those words ? " " Yes, sir." " Have you a present recollection of the precise language of Mr. Dobbins ? " " That is as near as I can remember it." Upon this evidence would the jury have been justified in finding an agreement by Dobbins, that, notwithstanding the dishonor of the note, the policy should be and continue an available security ? Upon a motion for nonsuit the evidence is not to be weighed or balanced. The Plaintiff is entitled to an affirmative answer upon any question of weight or degree. There must, however, be legal evidence in support of the claim. Giving the full benefit of all question and doubt, I can see no evidence here to justify the Plaintiffs' claim that Dobbins agreed that the policy should continue in force. The expression, as given by Bruce, that he said the note could lie over a few days, without any prejudice to the policy, was immediately corrected by him, when he puts the answer in language which applies to the note only, and not to the policy. The conclusion, and the only conclusion to be drawn from this evidence is, that Dobbins would not press for payment of the note, that it might lie over for a short time. It contains no reference to continuing or reviving a liability on the policy.

If I am right in this view of the testimony, it is not necessary to inquire into the authority of Dobbins. I think the judgment is right and should be affirmed.

Concurring, Wright, Scrugham, Davies, and Bockes.

Grover,—J. (dissenting)—This action was brought upon a marine policy, issued by the Defendant upon the schooner Zenobia, for four thousand dollars, covering certain perils of lake navigation, &c.

A note at four months was given by the owner, and endorsed

by Plaintiffs—to whom the loss was made payable—for the premium; and the policy contained a clause providing that, if the note was not paid at maturity, the full amount of premium should be considered as earned, and that the policy should be void while the note remained overdue and unpaid. The note matured and was not paid, and during such time the schooner was lost by one of the perils covered by the policy.

Upon the trial in the Superior Court, in New York, the questions litigated were, whether David P. Dobbins, of Buffalo, was authorized by the Defendant to waive or modify the above clause, and if so, whether he in fact had done so. At the close of the evidence the Defendant's counsel moved for a dismissal of the complaint, which was granted by the Court, to which the proper exceptions were taken by the Plaintiffs' counsel. After judgment the Plaintiffs appealed to the General Term, and, after affirmance by that Court, the Plaintiffs appealed to this Court.

That portion of the policy providing that, unless the note given for the premium should be paid at maturity, the policy should be void until the same was paid, constitutes a valid agreement between the parties (Beadle v. Chenango County Mutual Insurance Company, 3 Hill 161). This was conceded upon the argument by Plaintiffs' counsel. It follows that the vessel having been lost after maturity and before payment, the Defendant is not liable, unless the Plaintiffs showed a waiver of that clause of the policy, or an estoppel. Subsequent payment of the note would not have aided the Plaintiffs. Such payment revived the policy only from the time of its being made, and would not make it valid during the interval that the note remained past due. Hence the proof given of offers to pay after the loss, and the inquiry whether when such offers were made the party making them had heard of the loss, were wholly immaterial. The only questions litigated upon the trial, upon which the right of recovery depended, were whether the Defendant had waived this provision, or whether what had been done estopped the Defendant from setting it up as a defence.

To determine these questions it was necessary to ascertain the

extent of the authority of Dobbins, the Defendant's agent at Buffalo, and also what he had done in the premises. The evidence showed that the Defendant's principal place of business was in the city of New York; that Dobbins was its agent at Buffalo; that he kept an office there in which he transacted the insurance business of the Defendant at that place, which was of considerable amount; that he was furnished with printed blank policies, executed by the officers of the company; that he made contracts of insurance on behalf of the Defendant, filled up the policies in accordance therewith, and issued them to the assured; that he took notes for the premium without interest, running not to exceed four months; that, to a large extent, he had charge of the collection of such notes; that, at maturity, he was in the habit of renewing such notes with the knowledge of the Defendant by taking other notes for the whole or a part thereof, in his discretion, although he testifies that his rule was to require part payment and additional security.

These facts prove, I think, that Dobbins was the general agent of the company, with full power to negotiate contracts of insurance binding upon the Defendant; that, in making such contracts, he had authority to strike out the clause in question, and make such other modifications therein as he saw fit; that he had the like authority, in relation to the collection of the notes, to insist upon prompt payment, to require new notes with additional security, or give an extension upon original notes.

Dobbins testifies that he always included interest in new notes taken by him. This, in case of a new note payable in future, would have been necessary, or the company would have lost the interest. After maturity of an original note the law requires payment of interest until paid. While power to an agent should not be implied beyond what was fairly within the contemplation of the parties, as ascertained from the delegation of authority and the course of transacting business by the agent, as known to the principal in the present case, that delegation and the mode of transacting business by Dobbins shows that he was clothed with full authority by the Defendant, in respect to renewing, extending,

and collecting premium notes in his hands which he had taken, and that this included power to make arrangements respecting the clause in question, which was obviously intended only to secure payment of the note (See Story on Agency, §§ 53, 106, 126; Sheldon v. The Atlantic Co., 26 N. Y. 460; Wood v. Poughkeepsie Mutual Ins. Co., 32 N. Y. 619; Lightbody v. The North Am. Ins. Co., 23 Wend. 18).

It remains to inquire whether Dobbins did, in fact, waive the clause, or do anything estopping the Defendants from defending upon that ground. This must, in the present case, be determined by the testimony given by E. K. Bruce, the agent of the assured; for, although his testimony was entirely contradicted by Dobbins, the Court, upon a motion for nonsuit, could not take the contradiction into consideration, as that only presented a question as to the credibility of witnesses, to be determined by the jury, which the Court refused to submit. The testimony of Moore, as to the conversation between him and Dobbins, was inadmissible, had it been objected to by the Defendant (Trustees Baptist Church v. Brooklyn Fire Ins. Co., 28 N. Y. 153). Besides, Moore, at the time, was not the agent of either party, and anything said to him could not constitute a waiver or an estoppel against the Defendant. Bruce testified that he was agent of the assured; that he saw Dobbins, at about the time the note matured, at the corner of the Exchange in Buffalo, and that Dobbins told him the note would be all right to lie over; that the company would as soon have the interest as the money; that he told Dobbins the endorsers were perfectly good; that Dobbins said he knew that. Upon cross-examination the witness testified that this was shortly after the maturity of the note; that he told Dobbins he wanted him to wait until the Zenobia came from Chicago for payment of that note—referring to the note given for the premium; that he told him the note was perfectly good; he said he knew that. Upon reëxamination, in answer to a request to state all that was said, the witness testified that he told Dobbins that he wanted the note extended, and to wait until that vessel came down from Chicago; that he (Dobbins) said the note was perfectly good; that the

company would as soon have the interest as the money, and made no objection whatever to the arrangement. It may be remarked that the credibility of this testimony was a question solely for the jury; and that neither the Court, upon the trial, nor this Court, has anything to do with the suggestions of counsel upon that question. This testimony, if credited by the jury, authorized a finding that the company agreed that the note might lie over for a few days, or for a reasonable time for the vessel to return from Chicago (upon which trip she was lost), although such agreement, being without consideration, had no validity as an extension of time on the note, and notwithstanding an action for its collection might have been immediately brought. Yet, when the payment was secured by a forfeiture of the policy, I think such agreement will estop the party from insisting upon the forfeiture. An agreement to waiver the forfeiture, like all others, requires a consideration.

A party is estopped when he has intentionally induced another to do or forbear the doing of acts, by his representations or agreements, in case such other would be injured by showing the representations untrue or the agreement invalid. In this case, Dobbins and Bruce both knew of the clause voiding the policy during nonpayment of the note. Both are presumed to have known that an agreement to extend the note had no validity, unless made upon consideration. Both knew the clause was only designed to secure prompt payment. Under these circumstances (if Bruce's testimony is true) they agree to extend the time for payment of the note. The fair inference is, that Bruce is thereby induced to delay payment, and that Dobbins designed he should so delay. Under such a state of facts it would be a fraud on the insured to insist upon the forfeiture (Young *v.* Hunter, 2 Seld. 203).

The judgment should be reversed and a new trial ordered, costs to abide the event.

Concurring with GROVER was PARKER, J.

Affirmed.                                        JOEL TIFFANY,
                                                        State Reporter.