# WHEELING.

1873.
June Term.

MUHLEMAN VS. NATIONAL INSURANCE COMPANY.

CHARLES MUHLEMAN, WHO SUES FOR HIMSELF AND
FOR THE USE OF C. H. BOOTH, JOHN MULRINE,
W. G. BATTELLE, FREDERICK KIMPLE, JACKSON
HARRISON, GEORGE PEPPERS AND C. G. YOUNG,
OWNERS OF NINE-SIXTEENTHS OF THE STEAMER
POTOMAC—PLAINTIFF IN THE ACTION AND DE-
FENDANT IN ERROR *against* THE NATIONAL IN-
SURANCE COMPANY OF WHEELING—DEFENDANT
IN THE ACTION, PLAINTIFF IN ERROR.

Decided July 17th, 1873.

### SYLLABUS.

1. The practice of inserting in a demurrer to evidence the evidence on
both sides, is proper and well established by the authorities.

1. "In such case, the demurrant must be considered as admitting all
that can reasonably be inferred by a jury, from the evidence given
by the other party; and as waiving all the evidence on his part
which contradicts that offered by the other party, or the credit of

which is impeached; and all inferences from his own evidence, which do not necessarily flow from it."

1873.
June Term.

3. The policy of insurance recites that, "The Company, having been paid, as consideration for this insurance, Charles Muhleman's note for $400, at 9 months—the nine-sixteenths interest of said boat is hereby insured, being valued at $18,000." Charles Muhleman, in fact, did not execute his note, but a few days after the date of the policy, and at the delivery thereof to him at the office of the insurer by its clerk, Charles Muhleman, who was the captain of said boat, made and delivered to the clerk of the insurer, for the premium of insurance, the note of the "Steamer Potomac and Owners," and signed "Steamer Potomac and Owners," per Charles Muhleman, Captain," and in lieu of giving his own note, and the same was accepted and received by the clerk for the premium of insurance in lieu of Charles Muhleman's note. HELD,

That it was competent for the insurer, by its clerk, to receive and accept the said note for the premium, in lieu of the note of Charles Muhleman, and that by so accepting it, the insurer waived the note of Charles Muhleman, and should be thereby estopped from claiming any advantage in an action on the policy, from the fact that Muhleman did not make and deliver his note as recited in the policy. HELD also,

That it is competent to prove such waiver by parol.

4. An insurance company acts and speaks by its officers, and what the officers say and do, when in discharge of their duty as officers, and in relation to the particular duty assigned to them, is evidence against the company.

5. The said policy of insurance contains this clause: "And in case any note or obligation given for the premium on this risk, shall not be paid at maturity, such failure of payment shall terminate this insurance, and said note or obligation shall be considered the premium for the risk thus terminated." HELD,

That this clause covers and applies to the note of the "Steamer Potomac and Owners," given and received for the premium as above stated, and that, on the failure of the payment of the note at its maturity, the insurance ceased, according to the provision of the policy. HELD,

Further, that the boat having been lost by fire after the maturity of said note, that the mere voluntary payment of the note with legal interest, after the loss, by Muhleman to the clerk of the insurer at its office, against the expressed wish of the clerk made at the time of payment, did not, of itself, waive the forfeiture of insurance and revivify the policy so as to entitle the insured to recov-

or the insurance by reason of the loss of the boat, notwithstanding, the failure to pay the note at maturity. HELD,

Also, that in the absence of other evidence, it cannot be inferred from the mere fact, that the note of the "Steamer Potomac and Owners'> was received and accepted as aforesaid, that it was received and accepted in satisfaction and discharge of the premium of insurance.

6. "A waiver, to be operative, must be supported by an agreement founded on a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting on performance of the contract or forfeiture of the condition." HELD,

That the evidence in this case does not establish a waiver or estoppel as to the performance of the condition prescribed in the policy, that if the premium on the risk shall not be paid at maturity, such. failure shall terminate the insurance.

This is an action of covenant, from the Circuit Court of Ohio county. On the 18th day of September 1867, the Defendant issued to the Plaintiff a policy of insurance on the Steamer Potomac for $5,000, and on which the premium was $400. It is stated in the policy that the Defendant had been paid, as consideration for the insurance, "Charles Muhleman's note for $400, at 9 months;" but the note received by the Defendant was the negotiable note of "Steamer Potomac and Owners, per Chas. Muhleman, Capt," dated Sept. 18, 1867, and due nine months after date, payable at the First National Bank of Wheeling. The Steamer Potomac was destroyed by fire at Cincinnati, August 6th, 1868. The note was paid Sept. 15th, 1868.

It was stipulated in the policy that in case any note or obligation given for the premium on this risk, should not be paid at maturity, such failure of payment should terminate the insurance, and said note or obligation should be considered the premium for the risk thus terminated. There were six pleas filed; but it is only necessary to consider the fifth and sixth, which are substantially stated in the opinion of the Court.

On the 29th January 1870, after all the testimony in the case had been heard by the jury, the Defendant

filed a demurrer to the evidence, in which the Plaintiff joined. And the jury assessed the damages of the Plaintiff at $5,518.33, in case judgment should be given for the Plaintiff on the demurrer. On the 8th day of April 1871, the Court having considered the demurrer to the evidence and the verdict of the jury thereon, rendered a judgment for the Plaintiff for the said sum, with interest thereon from June 29th, 1870, at the rate of six per cent. per annum, and costs. The evidence is sufficiently stated in the opinion of the Court.

*Lamb* for Plaintiff in error.

*Wheat* and *Allison* for Defendant in error.

HAYMOND President.

Plaintiff, on the 6th day of February 1869, brought an action of covenant, in the Circuit Court of Ohio county, against the Defendant upon a policy of insurance issued by the Defendant to Plaintiff, on nine-sixteenths interest of the steamboat "Potomac," to navigate the Ohio river between Pittsburgh, Pa., and Louisville, in the State of Kentucky for the term of one year from the 18th of September 1867. And in case of loss, such loss to be paid in sixty days after proof of loss, proof of interest, and adjustment exhibited to the assurers, at the office of Defendant in Wheeling, the company having been paid, as the consideration for said insurance, Charles Muhleman's note for $400, at nine months, the nine-sixteenths interest of the boat being valued at $18,000. The declaration does not allege or aver the payment of the $400 premium when it became payable. But it does aver that the steamboat "Potomac," on the 6th of August 1868, while the policy was in full force, and then being in the Ohio river at the port of Cincinnati, was accidentally and by misfortune burned and totally destroyed by fire, and that the Defendant had notice thereof at its office in Wheeling on the 8th day of August

1868, and that proof of the loss was furnished the Defendant within thirty days from the date thereof; and that the Plaintiff, "hath in all things fulfilled and performed, and kept the terms and conditions of the policy of insurance on his part to be kept and performed, whereby the Defendant became liable to pay to the Plaintiff the said sum of $5,000.00, sixty days after the 8th day of August 1868, the date when the proof of loss was so furnished to the Defendant, according to the form and effect of the policy of insurance &c." On the 26th day of November 1869, the Defendant, by its attorney, appeared in Court to the Plaintiff's action, and filed five several pleas in writing, to each of which the Plaintiff filed a general replication, with leave to give special matter in evidence. The three first of the pleas, as they appear in the record, I shall not now notice, and I am not able to see that any material question arises upon them, unless it be the plea of covenants performed. I will notice, at present, the fourth and fifth pleas, and only so far as to give their substance. The fourth plea alleges, in substance, that at the execution and delivery of the policy, the Plaintiff made and delivered to the Defendant his promissory note, for the premium or risk specified in the policy, for the sum of $400, bearing date on the 18th of September 1867, and payable nine months after date, at the First National Bank of Wheeling, to-wit, in Ohio county; and that afterwards, on the 21st day of June 1868, when the said promissory note became due and payable, the same being wholly unpaid, it was duly presented for payment at the said bank, and the Plaintiff did not, nor did any person on his behalf, then and there pay the same. And that in the said policy it was and is provided, that in case any note or obligation given for the premium on the risk therein specified, should not be paid at maturity, such failure of payment should terminate the insurance by the said policy made, and the said note or obligation should be considered the

premium for the risk thus terminated. And that the failure to pay the note given for the premium on the risk, occurred long before the time the "Steamboat Potomac" was consumed by fire, as alleged in the declaration, and that by such failure the insurance made by the policy terminated long before the loss happened &c.

The fifth plea is substantially and in effect the same as the fourth, though more general in the language employed.

At the Circuit Court, held on the 29th day of June 1870, the cause came on to be heard, and a jury was duly sworn to try the issues joined; and the Defendant demurred to the evidence, and the Plaintiff joined therein. Whereupon, the jury assessed the Plaintiff's damages at $5,518.33 cents, subject to the opinion of the Court upon the demurrer to evidence filed in the cause. Afwards, on the 8th day of April 1871, the Circuit Court rendered judgment upon the demurrer to evidence, in favor of the Plaintiff, for the amount of the verdict of the jury, and the costs of suit. From this judgment an appeal has been duly taken by the Defendant to this Court. There was no demurrer filed to the declaration. The Defendant did not object to the policy of insurance going in evidence; nor did it except to the opinion of the Court permitting the same to go in evidence. A bill of exceptions is the act of one party, and denies the admissibility of the evidence tendered. A demurrer to evidence is the act of both parties, and presents the question of the sufficiency of the evidence received. A demurrer to evidence, generally, does not amount to a waiver of a bill of exceptions taken to evidence admitted by the Court, and included in the evidence demurred to.

The only protection of the demurrant against the prejudices of a jury, may be the power to withdraw the application of the laws, to the facts proved by the evidence, from the determination of the jury. "By demurring, he subjects himself to the hazard of admitting

1873.
June Term.

Muhleman
v.
National
Insurance Co.

1873.
June Term.

Muhleman
v.
National
Insurance Co.

as facts, everything a jury might have inferred from the evidence. But that evidence should be legal; and its legality can only be enquired into upon an exception to its introduction." Dishazer *vs.* Maitland, 12 Leigh, 534, 535. The party who demurs to the evidence, alleges that the evidence is not good and sufficient in law to support the issue joined on the part of his adversary, who, on his part, by joining in the demurrer, avers that it is good and sufficient in law to maintain the issue joined on his part. The demurrant, by his demurrer, admits every fact which the evidence conduces to prove in favor of his adversary, or in other words, the court, in considering the demurrer to evidence, will presume in favor of the party joining in the demurrer any and every fact which the jury might have inferred from the evidence as exhibited. But these conclusions must be such as would result from a just and reasonable construction, and not from arbitrary inferences. 2 Wash. 203, 1 Johnson, 241, 4 Cranch, 219, 2 Tucker's Com. Chap. 17, Book 3, p. 292. The demurrer should set out the whole of the evidence on both sides. When there is contradictory testimony, at times, there has arisen difficulty. In the case of Green *vs.* Judith, 5 Rand. 1, it was decided that "The practice of inserting in a demurrer to evidence, the evidence on both sides, is established by repeated decisions."

" In such case the demurrant must be considered as admitting all that can reasonably be inferred, by a jury, from the evidence given by the other party; and as waiving all the evidence on his part which contradicts that offered by the other party, or the credit of which is impeached; and all inferences from his own evidence which do not necessarily flow from it. Green *vs.* Judith, 5 Rand., 1. In the case of Clopton's adm'r *vs.* Morris et al, 6 Leigh, 278, it was held that, " On a demurrer to evidence, the demurrant waives all his own evidence that at all conflicts with that of the other party,

admits the truth of his adversary's evidence, admits all inferences of fact that may fairly be deduced from that evidence, and submits it to the court to deduce such fair inferences." These decisions, I think, establish the correct doctrine as to demurrers to evidence, upon the points which they adjudicate. With this doctrine established it is not difficult to see that the demurrant by demurring, concedes much to his adversary, especially when the evidence is conflicting, and incurs great risk, unless his adversary's evidence, after making all reasonable inferences therefrom, fails to establish the issue on his part.

Although the policy recites that the consideration for the insurance of the nine-sixteenths of the boat has been paid by Charles Muhleman's note for $400 at nine months, it clearly appears from the evidence that Muhleman in fact did not execute his note to the Defendant for the insurance money, and that no note was made to the Defendant for the $400 premium until about a week after the date of the policy, and then Muhleman delivered to the Defendant the note of the "Steamer Potomac and Owners, per Charles Muhleman, Captain," which was dated the same date with the policy, and was for $400, and payable nine months after the date thereof, at the First National Bank of Wheeling. The Defendant received and accepted this note for the premium at the time the policy was delivered, in lieu of the note of Muhleman. In other words, it must be taken from the evidence that the Defendant waived Muhleman's note, and took and received in lieu thereof, for the premium, the note of the "Steamer Potomac and Owners." The policy was delivered to the Plaintiff at the office of the Defendant, in the city of Wheeling, by the clerk of the Defendant, and the note given was there received by the clerk for the premium. The note was afterwards, and before its maturity, left with the First National Bank of Wheeling for collection by the Defendant's clerk, and

remained there until it was past due, when it was withdrawn from the bank by the clerk for the Defendant, and by him held as the agent of the Defendant at its office in Wheeling, until it was paid by Muhleman on the 15th of September 1868. I think there is no doubt, that it was competent for the Defendant to waive the note of the Plaintiff, by its authorized agent, and take in lieu thereof the note that was given and received, and that it was competent to prove this fact by parol." An insurance company acts and speaks by its officers, and what the officers say and do when in dischage of their duty as officers, and in relation to the particular duty assigned to them, is evidence against the company. The waiver of the agent may be proved by parol, "Flanders on Fire Insurance, pp. 148, 149 and 150, Baptist Church vs. Brooklyn Fire Insurance Company, 18 Barbour, 69; S. C. 19 N. Y. 305; Sheldon vs. the Atlantic Insurance Company, 26 N. Y. 460. Buckley vs. the Derby Fishing Company, 2 Conn. 252; Safford vs. Wyckoff, 4 Hill. 446, 447, per Walworth Chanceller; Barnes vs. Ontario Bank 19, N. Y.; Boehen vs. Williamsburgh Insurance Company, 35 N. Y. 131. Perkins vs. the Washington Insurance Company of the city of N. Y. 4 Cowen 645. Conner vs. the Mutual Insurance Company of Albany, 1 N. Y., 292, opinion of Johnson, Judge, 25 Barbour 189; Biglow on Estoppel, 525.; Herman's Law of Estoppel, p. 522, Sec. 555.

The Defendant having waived the giving of Muhleman's note by him, and received and accepted the note of the "Steamer Potomac and Owners," delivered by Muhleman in lieu of his own note is, and should justly be, estopped from claiming any advantage in this suit from the fact that Muhleman did not make and deliver to it his note as recited in the policy, Bigclow on Estoppel 524, 525, 560 and 561 and cases there cited. Herman's Law of Estoppel, 343, 344, sec. 331. Flanders on Fire Insurance, 148, 149, 150, 151, 152, 153 and cases there cited. The evidence does not strictly support the issue

made by Defendant by its 4th and 5th special pleas, be- cause Muhleman did not execute to the Defendant his note for the premium of $400, as in each of these pleas is alleged. As before remarked a different note was executed, and accepted by Defendant.

But, among other pleas, the Defendant filed the plea of covenants performed, upon which issue was joined; and the Plaintiff gave in evidence the policy, which, among other things, contained this express provision, viz: "And in case any note or obligation given for the premium on this risk, shall not be paid at maturity, such failure of payment shall terminate this insurance, and said note or obligation shall be considered the Premium for the risk thus terminated." The note received by the Defendant was certainly given for the premium or risk, and the clause of the policy just quoted covers it. I do not think, from any fact proven, or any reasonable inference that could be properly drawn from any fact proven, in the cause by the Plaintiff, that a jury would be authorized to infer that the note was received and accepted in satisfaction and discharge of the premium or risk. Then, as this clause covers the note, the next question that presents itself for determination is, did the Defendant or its agent or agents say anything, or do any act by which it waived this clause of the policy, and thereby became estopped from any legal rights or claim of benefit thereunder? The Plaintiff's evidence clearly shews that no part of the note was paid within the nine months, and, in fact, it clearly shews that it was not paid until more than a month after the loss of the boat, and nearly two months after the note became payable. To entitle the Plaintiff to recover in this action upon the demurrer to the evidence, the evidence must show that this clause of the policy, now under consideration, became inoperative and of no effect. He contends that the evidence shews a waiver and estoppel *in pais*, of the Defendant, as to this clause. And the question arises, is this claim of the Plaintiff supported by the evidence?

1873.
June Term.

Muhleman
v.
National
Insurance Co.

"A waiver to be operative, must be supported by an agreement founded on a valuable consideration, or the act relied on as a waiver, must be such as to estop a party from insisting on performance of the contract, or forfeiture of the condition." Bigelow on Estoppel, p. 524; Ripley *vs.* Ætna Insurance Company, 30, N. Y., 136, 164. There must have been some act or declaration of the Defendant, or the Defendant's agent, to the Plaintiff, which so affected the conduct of the latter to his injury, as that it would be unjust now to permit the Defendant to set up or have the benefit of the clause of the policy in question. "It is not necessary to an equitable estoppel, that the party should intend wilfully to mislead; but whatever may be the intent, if he make such a representation as a sensible man would take to be true, and believe that it was meant that he should act upon it, and he does so act, the party making the representation is precluded from contesting its truth;" 50, N. Y., 575, Herman's Law of Estops, p. 343, sec. 331, Bigelow on Estoppel, pp. 553, 554 and 555, and cases there referred to. Horn *vs.* Cole, *et al.*, recently decided by the Supreme Court of New Hampshire, and reported in the January number of the American Law Times and Reports, p. 33. In this case it was decided that, "If the owner of goods, to prevent them from being attached as his own, represent that they belong to another, and the party to whom the representation is made, relying, and from the circumstances having reason to rely, on the representation as true, attach the goods for a debt due from the party to whom it was represented that the goods belonged; in trover for attaching the goods, the owner will not be permitted to show that his representation was false, though at the time when he made it, he had no notice of the debt on which the goods were attached, and had no intention to deceive the party who attached them." The opinion in this last case was delivered by Chief Justice Perly, and is a lengthy and learned discussion and exposition of equitable estoppel,.

in which most of the leading cases which have been determined touching this subject, are reviewed and compared.

According to the evidence, the Plaintiff gave himself no concern whatever about the payment of the note given for the risk until some time after the loss. He did not ask for any extension of time of payment of the note, and there was no interview or agreement of any kind between Plaintiff or any agent of his and the Defendant or its agent, in relation to the payment of the note until after the loss. The Plaintiff had the policy with him in the boat when it was destroyed, and he must have known that under his contract with the Defendant, as contained in the policy, the insurance of the boat ceased after the 21st day of June, unless the note was paid at that time, and it was his duty to see that it was paid, if he expected the insurance to continue, unless some other sufficient arrangement was made with Defendant. I think it clear from Plaintiff's evidence that as late as August the 8th he supposed the note had been paid, for he says: "When I came home from Cincinnati, I found the note had not been paid by John Mulrine; that was the 8th of August 1868; between the 8th of August and the 18th of September, I got to inquiring of Mulrine if he had ever paid up the premium note, and he said not; he said Bishop (the clerk) had never brought it there." It was on the 8th of August, that Plaintiff filed the proof of loss. It was not the duty of Defendant to call on Plaintiff or his agent for the payment of the note at or after maturity; but under the contract of insurance of Plaintiff it was his duty to see that the note was paid at maturity. Nothing in the contract required the company to notify Plaintiff of the forfeiture of the policy. Plaintiff had the contract, and is presumed to have known its covenants and stipulations, and was bound to take notice thereof. The forfeiture or non-forfeiture of the policy depended on the Plaintiff's action or non-action in reference to the pay-

ment of the note, of which he had full notice in the policy. The evidence shews that Plaintiff had a policy from Defendant on the same boat for the year previous, and also the same company had a policy from Defendant on "Steamer Rebecca" for the year previous, and that each of these policies contained a similar clause to the one under consideration. The note given for the insurance of the Rebecca, was not paid at maturity, as testified to by witness Boothe; but Boothe says: "It was paid a short time afterwards; we were a little pushed at the time the note fell due, and asked for time. Bishop (the clerk) came down to the store, and agreed to let us have time; but charged us interest; he said he must have interest." , Here the insured recognized the binding effect of the clause of the policy in question, and before or on the day of the maturity of the note given for the premium, asked for an extension of time of payment, and it was granted in that case on the terms stated. This was done by mutual agreement, and no forfeiture was claimed. No such agreement was made in the case under consideration, and no request was made for an extension of time of payment. The note given for the insurance of the "Steamer Potomac" for the year previous, it seems, was paid after maturity, but the Plaintiff, from his own evidence, did not know whether it was paid before or after maturity, nor anything in reference to the circumstances of its payment. If it was paid after maturity, and no forfeiture of the policy claimed, it was a mere favor or act of grace extended in that instance to the insured by the Defendant, which, under the circumstances, as they appear from the evidence, could not in any just sense extend to, or effect the contract as contained in the subsequent policy, or impose any new duties or responsibilities upon the Defendant.

But it is claimed by the Appellee that Bishop (the clerk) received the amount of the note on the 15th of September, after the loss, and accounted for the money to the company, and that the company thereby waived

the provision of forfeiture in the policy, and should now therefore be estopped from claiming any benefit from the provision. The company or its agent did not request payment of the note, nothing had been said to Plaintiff on the subject; but Plaintiff finding that the note had not been paid (a matter which it was his place to have known) armed himself with legal tenders, and went to Defendant's office with a witness, evidently taken for the purpose, and asked Bishop if he had the note. Bishop replied that he had. Plaintiff said to Bishop that he wanted to pay it; and Bishop said he need not be particular about it as, when a meeting of the Board was held, an adjustment could be had. Plaintiff then said to Bishop; "I have legal tenders here, and I want to pay the note ; I got them from Sam Hildreth ; what is the interest on the note? he, (Bishop) said not "quite six dollars :" I give him the $406, and he gave me the note." This was all that was said or done at the time. This was clearly a voluntary payment made by the Plaintiff to Bishop (the clerk) against Bishop's will and desire expressed at the time to Plaintiff; but Plaintiff evidently seeking an advantage insisted that he would pay the note with its interest to Bishop with the legal tenders, and thus by his own persistent act forced Bishop to receive the whole amount of the note including interest. Plaintiff now claimes that Defendant, by thus receiving the whole amount of the note and interest, waived the forfeiture clause of the policy. Defendant held out no inducement by act or word to Plaintiff to influence him to make the payment. I cannot bring my mind to the conclusion, from the circumstances, that either Plaintiff or Bishop, at the time of the payment of the note, supposed or believed that either party intended to waive any existing rights by the transaction, or that they or either of them had done so. I cannot see that Bishop said or did any thing to prejudice or mislead the Plaintiff, or that from the evidence it should be so held. The clause of the

64

policy in this case under consideration is not void; it exists in many if not most of them. In the case of Wall et al vs. the Home Insurance Company, determined by the Court of Appeals of the State of New York in 36 N. Y. 157, the clause of the policy passed upon by the court was very similar to the one in question in this case. In that case it was determined by the court that, "In a marine policy of insurance with the clause: " In case the note or obligation given for the premium herefor be not paid at maturity, the full amount of premium shall be considered as earned, and this policy becomes void, while said note or obligation remains over due and unpaid." His note given for the premium became due, and was protested, and while thus unpaid the vessel insured was lost. Held, that the right of recovery by the insured was at an end. *Held further*, that an agreement by the company that the *note* might lie over a few days, did not waive the forfeiture, or restore the right of action upon the policy." In that case the plaintiff relied upon wavier and estoppel as here, and I think the evidence as related by the judge who delivered the opinion of the court tended more strongly to shew a waiver, and estoppel than the evidence in this case, and yet, it was held to be insufficient. Judge Hunt who delivered the opinion of the court in the case cited, in speaking of the note, the failure to pay it at maturity and the provision in the policy says; "There was thus a clear breach of a valid condition, and by the terms of the contract, the obligation of the insurer was at an end ; the note, however, remaining in full force and effect." And the judge cites these authorities Beadle vs. Chenango M. Insurance Company, 3 Hill 161 ; Neely vs. Onondaga M. Insurance Company, 7 id 49. Smith vs. Saratoga M. Insurance Company, 3 id. 508; See also upon the same subject Howell vs. Knickerbocker Insurance Company, 3 Rob. N. Y. R. 247, Want et als vs. Blunt et als 12 East 183 ; Simpson vs. Accidental Death Insurance Company, 89 Eng. Com. law. R. 257, Pitt vs.

Berkshire Life Insurance Company, 100 Mass. R. 500. Whether a court of equity would grant relief in part to a judgment obtained upon the note in this case for the full amount, upon the principles held in Winslow *vs.* Dawson, 1 Wash. Va. R. 118 and Mayo *vs.* Judah, 5 Mumf. 495, I do not now decide as I do not think the question fairly arises in this case.

It is essential to the existence of Fire Insurance Companies that their customers should be prompt in making payment of the premiums of insurance. It is also, just and proper that such companies should be held to a just performace of their contracts of insurance. But how can the insured, upon legal or equitable principles, expect to recover upon a contract against an insurance company when he himself, without sufficient excuse, has failed to comply with his covenants, which were the consideration for the undertaking of the company. In this case, the evidence shows clearly to my mind, that the Plaintiff neglected his duty, under the stipulations of the policy, without being induced to do so by the Defendant or its agent. That his failure to give attention to the note, or to pay it at maturity, was owing entirely to his own inexcusable negligence of his plain duty. No valid stipulation or covenant contained in a policy of insurance or of any other contract, should be avoided, or held to be waived, or otherwise held to be of non-effect except for good and sufficient cause, established by sufficient evidence. It is true that policies of insurance should be construed most strongly against the insurer, and liberally in favor of the insured. But I do not understand it thereby to be meant that plain provisions of the policy, which are held by the courts to be valid and binding, are to be construed as being meaningless, or to be avoided otherwise than for good and sufficient cause. It is perhaps not material in this case, but in the case of Davis's adm'r *vs.* Thomas &c., 5 Leigh 1, it was held that, "Matter of estoppel cannot be relied on

unless it be pleaded, when the matter to be pleaded appears on the record.    But it is otherwise when the matter is introduced on the general issue for the party cannot be called on to show his estoppel until his adversary has attempted to use the improper defence."

For the foregoing reasons I am satisfied that the judgment of the Circuit Court of the county of Ohio, rendered in this cause upon the demurrer to evidence, is erroneous, and the judgment must therefore be reversed; and the Appellant recover against the Appellee its costs in this Court expended.    And this Court proceeding to render such judgment as said Circuit Court should have rendered upon the demurrer to evidence, the law as applied to the evidence is in favor of the Defendant below, and judgment must be rendered in favor of the Defendant, upon the demurrer to evidence, against the Plaintiff in the Court below.


HOFFMAN and MOORE, Judges, concur in the foregoing opinion.    PAULL, Judge, absent.