# CHARLESTON.

## CRAMER *v.* POMEROY *et al.*

### Submitted June 17. 1899—Decided Nov. 18, 1899.

1. APPEAL AND ERROR—*Evidence.*

 When the question is whether a fact has been established by the evidence, either directly or inferentially, in favor of the demurrer, a fair test is furnished by the inquiry, would the court set aside the verdict, had the jury, on the evidence, found the fact? (p. 57.)

2. GAMING—*Justice of the Peace.*

 A case in which the testimony shows that the plaintiff lost to the defendants, betting at faro, within twenty-four hours, two hundred and seventy dollars, and paid or delivered the same to them, and was entitled to recover it back by suit before a justice of the peace. (p. 58.)

Error to circuit court, Tyler County.

Action by John C. Cramer against Daniel Pomeroy and A. H. Simons. Judgment for plaintiff. Defendant brings error.

*Affirmed.*

B. T. BOWERS, for plaintiffs in error.

F. L. BLACKMARR, for defendant in error.

ENGLISH, JUDGE:

This was a civil action brought by Cramer against Pomeroy and Simons before a justice of the peace in Tyler County to recover from the defendants two hundred and seventy dollars, which was lost by him on December 24, 1895, in a gambling house belonging to said defendants, in the town of Sistersville, W. Va., known as the "Manhattan," in the game of faro. Judgment was rendered for the plaintiff for two hundred and seventy dollars, costs, and interest thereon until paid. The defendants appealed to the circuit court. The case was tried in that court before

a jury. There was a demurrer to the evidence, and the matters of law arising upon said demurrer, being submitted to the court, were found for the plaintiff, and judgment was rendered against the defendants and their surety in the appeal bond for two hundred and eighty dollars and ten cents, with interest from the 29th of April, 1897, until paid, and costs. Thereupon the defendants moved the court to set aside the conditional verdict and judgment aforesaid, and grant them a new trial, for the reason that the same was not sustained by either the law or the evidence, which motion was overruled. The defendants excepted and took a bill of exceptions setting forth the testimony, and obtained this writ of error.

The plaintiffs in error claim that the circuit court erred, in its rulings upon the demurrer to the evidence, in rendering a joint judgment against Pomeroy and Simons unless from the evidence both were jointly winners of the money lost by plaintiff, and that the evidence does not show that the defendant Simons was the winner, or that he had any thing to do with the game at which the money was lost. In the case of *Clopton's Adm's* v. *Morris*, 6 Leigh, 278, it was held that on a demurrer to evidence the demurrant waives all his own evidence that at all conflicts with that of the other party, admits the truth of his adversary's evidence, admits all inferences of fact that may fairly be deduced from that evidence, and submits it to the court to deduce such fair inferences. See *Muhleman* v. *Insurance Co.*, 6 W. Va. 508; also, *Ware* v. *Stephenson*, 10 Leigh, 165, where Stanard, J., delivering the opinion of the court, said: "When the question is whether or no a fact ought to be taken as established by the evidence, either directly or inferentially, in favor of the demurrer, I do not know a juster test than would be furnished by the inquiry, would the court set aside the verdict, had the jury, on the evidence, found the fact? If the verdict so finding the fact would not be set aside, it ought to be considered as established by the evidence demurred to." In the case at bar only one witness was introduced, and he was the plaintiff, and from his testimony it appears that the defendants seemed to own the gambling house in which the money was lost; that he was invited to the place by Pomeroy, one of the defendants, and by him was given the

key to the room usually kept locked, "where the nice people play;" that he knew the proprietors, and knew how they did business, and had seen them at times, when the games closed, take the money from the gaming tables and the faro bank, count it, set down the amount in a book, put the money in bags, and deposit it in the safe in the front room; that he had seen the defendants put money in the safe, and go to it and get money; that they had the keys to the safe. On the evening the plaintiff lost this two hundred and seventy dollars, the defendant Pomeroy and Fred Papaugh dealt, and took the money that plaintiff lost, and put it in a drawer of the faro bank which was operated in the said gambling house. How Papaugh happened to be dealing faro on that particular evening does not appear. This testimony was evidently elicited by questions propounded to the witness, and when he states, in the conclusion of his testimony: "It was generally understood that they kept the house. I never saw any one else there, except them doing anything or exercising any control over the place,"—it is evident that he did not mean Pomeroy and Papaugh, but meant Pomeroy and Simons, the defendants, who, as he had before stated, collected the winnings from the faro bank and other gaming tables, deposited them in the safe, and carried the keys. The money lost by plaintiff went into the drawers of the faro bank, and the necessary inference from that and the other testimony is that the defendants received the money lost, although Simons was not actually present when it was lost by plaintiff. Applying the test indicated by Judge Stanard in *Ware* v. *Stephenson, supra,* if this case had been left to the jury, and a verdict had been returned for the plaintiff, we could not have set it aside. The whole testimony, considered together, shows that the defendants were running this gambling house, and the money lost went into their money drawers; and for that reason we cannot disturb the finding and judgment of the court, which is affirmed.

*Affirmed.*