# Richmond

AVERY JUNIOR SHARP V. RICHMOND LIFE INSURANCE COMPANY.

September 1, 1971.

Record No. 7573.

Present, All the Justices.

*L. Harvey Neff, Jr. (James T. Ward,* on brief), for appellant.

*George P. Young (Campbell & Campbell,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the court.

This chancery suit was brought by Avery Junior Sharp against Richmond Life Insurance Company to compel specific performance of a contract of credit accident and sickness insurance. The Insurance Company denied liability on the ground that Sharp's disability resulted from sickness or disease contracted prior to the effective date of the policy and thus expressly excluded from coverage. From the final decree denying Sharp the relief prayed for we granted him an appeal.

On March 25, 1969, Sharp purchased a car and financed the pur-

chase with a note for $2539.80, including premiums of $76.20 each for group credit life insurance and disability insurance, which the dealer endorsed and discounted at Merchants and Farmers Bank of Galax. J. K. Liddle, an employee of the Bank, also represented the Insurance Company. After discussion with Sharp, he approved the loan with the insurance coverage thereon and subsequently issued for the Insurance Company the certificate of insurance in controversy. This designated Sharp as the "insured debtor" and provided for payment of benefits to the Bank as creditor. No written application for insurance or physical examination was required of Sharp.

Sharp had consulted Dr. Y. W. Marinus in 1967 for nervousness, headaches, "blackouts" and temporary loss of memory. The physician thought that Sharp had a brain tumor and sent him to a neurosurgeon who, after making extensive tests, could not confirm Dr. Marinus' suspicion. Because of his health Sharp gave up his job as a truck driver and took less strenuous employment.

In November, 1968, Sharp had suffered "another kind of seizure" and was admitted by Dr. Marinus to a local hospital, from which he was transferred to the Veterans Administration Hospital in Johnson City, Tennessee. A week later he was moved to the Veterans Administration Hospital in Durham, North Carolina, where neurosurgeons were available. The cause of his disability was not determined and Sharp was discharged on January 6, 1969. When he was readmitted to the hospital in June, 1969, a maligant brain tumor was discovered and removed. Sharp has since been totally disabled.

In 1968 Sharp had obtained from the Bank a loan which also carried the additional security of disability insurance written by the Insurance Company. With Liddle's assistance Sharp signed and filed a claim on February 2, 1969 for benefits under this policy, describing the cause of his disability as "brain disorder". This claim was paid by the Insurance Company.

By the time Sharp's new loan was approved on March 25, 1969, Liddle had known and done business with him for years. He knew that Sharp had been ill and had changed jobs because of "blackouts". On the day the loan was made Sharp appeared to Liddle to be in reasonably good health.

The following provisions were included in the disability part of the insurance certificate:

\* \* \* \* \*

"ACCIDENT AND SICKNESS INDEMNITY

\* \* \* \* \*

"DEFINITION OF TOTAL DISABILITY: The Insured Debtor shall be considered totally disabled when, as a result of injury occurring or sickness or disease contracted and commencing while this Certificate is in force, he is wholly and continuously disabled and prevented from performing each and every duty pertaining to his occupation for which he is reasonably fitted by reason of education, training or experience. In either event he must be under the regular care and attendance of a legally qualified physician or surgeon, other than himself.

"THIS INSURANCE SHALL NOT TAKE EFFECT UNLESS THE INSURED IS IN SOUND HEALTH AND BETWEEN THE AGES OF 16 TO 59, BOTH INCLUSIVE, ON THE EFFECTIVE DATE HEREOF. EFFECTIVE DATE OF THE INSURANCE IS THE SAME AS THE DATE OF LOAN IN THE ABOVE SCHEDULE.

"SICKNESS CAUSED BY PRE-EXISTING CONDITIONS NOT INSURED.

\* \* \* \* \*

"DISABILITY EXCLUSIONS: Disability benefits shall not be payable hereunder if a disability is caused by or results from: \* \* \* (5) the accident occurred or the sickness or disease was contracted and commenced prior to the effective date stated in the Schedule hereof."

\* \* \* \* \*

Sharp contended that the terms of the policy were modified by the following Code provision enacted in 1966:

"§ 38.1-361.1. *When liability not to be denied because of pre-existing disease, physical impairment or defect.*—No insurer having issued a policy of accident and sickness insurance pursuant to the provisions of this article shall deny liability on any claim otherwise covered under such policy because of the existence of a disease or physical impairment or defect, congenital or otherwise, at the time of the making of the application for such policy, unless it be shown that the applicant knew or might reasonably have been expected to know of such disease, impairment or defect."

Sharp maintained that he was in reasonably good health on the

effective date of the insurance certificate, that he neither knew nor had reason to know that he had cancer of the brain and that the Insurance Company, having knowledge of his physical condition, was estopped to deny coverage.

The Insurance Company took the position that Code § 38.1-361.1 was inapplicable, that coverage for disability from a preexisting condition or disease was expressly excluded in the policy, and that the question was one of coverage rather than of estoppel.

In its final decree the court held that "no question of estoppel is here involved", that the policy "plainly stipulates against coverage where the applicant is not in sound health on the effective date of the policy and that since the evidence showed that the plaintiff was suffering from cancer and had been for some time before the policy was taken out, no coverage ever became effective."

By his assignments of error Sharp challenges the action of the court in ruling that the policy did not cover his disability because he was not in sound health on March 25, 1969, and that no question of estoppel was involved.

■ We have construed the terms "good health" and "sound health" in applications for insurance policies "to import apparent and reasonably sound health without any knowledge on the part of the applicant to the contrary". *Gilley v. Union Life Ins. Co.*, 194 Va. 966, 970, 76 S.E.2d 165, 168 (1953). This rule of construction has now been codified and expanded in Code § 38.1-361.1.

The Insurance Company insists that this statute is inapplicable to Sharp's insurance contract. It argues that the words "otherwise covered" in the statute mean that the prohibition against denial of liability applies only in the absence of express exclusionary language in the policy. We do not agree.

We believe that the correct interpretation of the statute is that it permits an insurer to limit its liability to risks not specifically excluded (e.g., self-inflicted injury) except that no "sound health" requirement or exclusion of preexisting illness may be enforced if the applicant did not know or might not reasonably have been expected to know about the insured's condition. Any other interpretation would permit an insurer to nullify the effect of the statute. Hence the court committed reversible error in failing to determine whether Sharp knew or might reasonably have been expected to know of his preexisting illness or impairment within the meaning of the statute.

■ We agree with the court that the Insurance Company is not estopped to deny that Sharp was covered by the policy.

It is true, as Sharp contends, that Liddle wrote the insurance contract with considerable knowledge of Sharp's physical condition. But this knowledge of its agent, imputed to the Insurance Company, may not be used to make a new contract for the parties covering risks specifically excluded under the policy. *Crowder* v. *General Accident, Etc. Co.*, 180 Va. 117, 21 S.E.2d 772 (1942).

The general rule, which we approve, is that the coverage of an insurance contract may not be extended by estoppel or implied waiver to include risks expressly excluded. Annot., 1 A.L.R.3d 1139, 1159 (1965); 43 Am. Jur. 2d, *Insurance*, § 1184, p. 1102 (1969); *Insurance Co. of North America* v. *Atlantic Nat. Ins. Co.*, 329 F.2d 769 (4th Cir. 1964). *But see Columbia Fire Ins. Co.* v. *Boykin*, 185 F.2d 771 (4th Cir. 1950).

Considering the provisions of the policy together we conclude that the "sound health" provision should be construed as an exclusion for preexisting conditions rather than a forfeiture. So the question is one of coverage which the Insurance Company is not estopped to deny. But coverage depends upon whether Sharp knew or might reasonably have been expected to know of his condition and to make this determination a new trial is required.

*Reversed and remanded.*