INSURANCE COMPANY OF NORTH AMERICA, a corporation, Plaintiff,

v.

NATIONAL STEEL SERVICE CENTER, INC., (formerly Korhumel Steel & Aluminum Co., Inc.), a corporation, Defendant.

Civ. A. No. 74-20-W.

United States District Court,
N. D. West Virginia,
Wheeling Division.

March 12, 1975.

---

**514**

Thomas B. Miller, Wheeling, W. Va., for plaintiff.

Gilbert S. Bachmann, Wheeling, W. Va., Martin F. Fahey, Weirton, W. Va., Eli Krivoshia, Jr., Pittsburgh, Pa., for defendant.

## MEMORANDUM ORDER

MAXWELL, Chief Judge.

On November 20, 1964, Korhumel Steel & Aluminum Company, incorporated under the laws of the State of Illinois, was qualified to do business in the State of West Virginia. At this time, and at all other times relevant to this action, Korhumel was a wholly-owned subsidiary corporation of National Steel Corporation. Although qualified to do business in this State, Korhumel failed to file a certificate attesting that fact with the West Virginia Workmen's Compensation Commission. W.Va.Code Ann. § 23–2–1 (1973 repl. vol.). Further, Korhumel paid no workmen's compensation premiums and submitted no quarterly payroll reports to the Commission as required by West Virginia law for workmen's compensation participants. W.Va.Code Ann. §§ 23–2–5, 23–2–8 (1973 repl. vol.).

Instead of taking these steps, which would have qualified Korhumel for workmen's compensation participation, in its own right, it sought designation as a "self-insurer" by representing itself to the West Virginia Workmen's Compensation Commission as a "division" of National Steel Corporation, a company which had previously been found by the Commission to have sufficient financial responsibility to maintain such status. National had also posted the statutorily required bond as a self insurer. W.Va. Code Ann. § 23–2–9 (1973 repl. vol.). Korhumel posted no such bond.

By gaining self-insurer status, Korhumel was required to pay no premiums to the Workmen's Compensation Fund, nor was the company required to file quarterly reports. Awards under self-insurer provisions are made by the West Virginia Workmen's Compensation Commission and paid directly by the self-insured employer.

On March 22, 1967, while the above-mentioned state of facts existed, an employee of Korhumel, Bernard Fair, was injured during the course of his employment. An award of $2,832 was approved by the West Virginia Workmen's Compensation Commission, which award was directed to be paid by National Steel Corporation, Korhumel Steel & Aluminum Company Division, 2424 Oakton Street, Evanston, Illinois. The award as approved by the Commission was paid.

At this time, Korhumel and its parent corporation National Steel Corporation were insured by the Insurance Company of North America (hereinafter INA) under both a standard workmen's compensation and employer's liability policy as well as a general liability policy.

The employer's liability policy carried an endorsement with respect to operations of the insured in West Virginia. Under this endorsement, INA agreed as follows:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom, sustained in the United States of America, its territories or possessions, or Canada

by any employee of the insured arising out of and in the course of his employment by the insured either in a State named in this endorsement or in operations necessary or incidental thereto."

This endorsement also amended certain other parts of the policy. In particular, it provided that:

"The insurance afforded by this endorsement shall not apply to the insured's operation in any State named in this endorsement or any operations necessary or incidental thereto during any period in which the insured is subject to the workmen's compensation or occupational disease law of any such State and is neither a legally qualified self-insurer nor a member or subscriber in good standing in the State Fund in any such State."

The general liability policy set forth INA's obligation to the insured as follows:

"I.  Coverage

The company agrees to pay all sums which the insured shall become obligated to pay by reason of the liability imposed upon the insured by law, or assumed by the insured under contract and subject to the limitations, conditions and other terms of this policy:

(a) Personal Injury Liability

For damages, including damages for care and loss of services, because of personal injury, including death at any time resulting therefrom, sustained by any person or persons;"

This obligation carried a limitation:

"As a condition to the recovery of any loss under this policy, with respect to personal injury to or the death of any employee(s) arising out of and in the course of employment by the named insured, the named insured warrants that it has not and will not abrogate its common law defenses under any workmen's compensation law by rejection thereof, or otherwise. In the event the named insured should,

at any time during the policy period, abrogate such defenses, such insurance as is afforded by Coverage I(a) with respect to such employee(s) shall automatically terminate at the same time."

On February 23, 1967, Bernard Fair instituted an action in this Court against Korhumel for the injuries he allegedly suffered during his employment. The claim stated in the complaint was based on common law negligence.

INA proceeded to defend this suit, as it was obligated to do under its policies of insurance, and moved to dismiss Fair's claim because of the exclusivity of his workmen's compensation remedy. This motion was filed on March 24, 1969.

On April 1, 1969, Fair replied to this motion, setting forth the facts relating to Korhumel's alleged self-insured status, maintaining that Korhumel was not properly qualified under the West Virginia Workmen's Compensation law and that Fair was therefore not barred from recovery for common law negligence.

Despite this notice of Fair's contentions and of the facts surrounding Korhumel's workmen's compensation coverage, INA continued the defense of that action without communicating any reservation of right to deny coverage under the conditions of its policies.

On February 15, 1972, this Court granted Korhumel's motion for summary judgment, dismissed Fair's common law negligence claim and held that while Korhumel had employed inept procedures, sufficient steps had been taken to qualify it as a self-insurer under West Virginia's Workmen's Compensation law. Thereafter, Fair appealed and on January 30, 1973, the Court of Appeals for the Fourth Circuit reversed, holding that Korhumel's efforts at obtaining workmen's compensation coverage were insufficient and, therefore, that Fair could maintain his common law action. Fair v. Korhumel Steel & Aluminum Company, Inc., 473 F.2d 703 (4th Cir. 1973).

Thereafter, by letter dated March 9, 1973, INA notified Korhumel, now National Steel Service Center, Inc., that it was questioning its coverage under the policy as to the Fair case and stated that it would continue in the defense of the Fair claim only under a reservation of right. National responded by letter on March 19, 1973, stating its position that coverage was not precluded by the terms of the policy and further that INA was estopped to deny coverage at such late date.

The case of Fair v. Korhumel has not, at this time, been terminated.

INA instituted this declaratory judgment action seeking a determination of whether coverage of the Fair claim exists under the above-stated facts. Each party has now moved the Court for summary judgment, supporting their respective motions with stipulations, affidavits, memoranda and oral argument. There being no dispute between the parties as to any material fact in this case, it is now mature for disposition by way of summary judgment.

The issues presented with respect to each policy of insurance are threefold: First, the nature of each of the disputed contract provisions must be ascertained; Second, it must be determined if INA had a right under those provisions to deny coverage of the Fair claim; and Third, the Court must decide if INA, through its actions with respect to the Fair claim, has foregone its right to deny coverage.

Generally speaking, those principles that govern the interpretation of other contracts govern the interpretation of contracts of insurance. Green v. Farm Bureau Mutual Automobile Insurance Co., 139 W.Va. 475, 80 S.E.2d 424 (1954). Paramount is the principle that where the terms of a contract are clear and unambiguous, there is no occasion for construction of those terms by the courts. Keffer v. Prudential Insurance Company of America, 153 W.Va. 813, 172 S.E.2d 714 (1970). Full effect of the contract terms must be given to the plain meaning intended. Stone v. National Surety Cor-poration, 147 W.Va. 83, 125 S.E.2d 618 (1962). Like other contracts, contracts of insurance must receive a practical and reasonable interpretation considering the intent of the parties and the purposes of the policy. McGann v. Hobbs Lumber Co., 150 W.Va. 364, 145 S.E.2d 476 (1965).

Applying these standards to the employer's liability policy, it is plain that INA insured Korhumel against "damages because of bodily injury by accident . . sustained . . . by an employee of the insured arising out of and in the course of his employment by the insured . . . ." This insurance, however, was not to apply to the insured's operation "in [West Virginia] or any operations necessary or incidental thereto during any period in which the insured is subject to the workmen's compensation . . . law of [West Virginia] and is neither a legally qualified self-insurer nor a member in good standing in the State Fund in [West Virginia]."

These provisions are clear and unambiguous and when read together in light of the circumstances surrounding the parties it is plain that the purpose of the latter provision is to exclude certain risks from the coverage of the former.

When a West Virginia employer fails to participate in the workmen's compensation program, he may be held liable for all damages suffered by reason of personal injuries sustained in the course of employment caused by the wrongful act, neglect or default of the employer. W.Va.Code Ann. § 23–2–8 (1973 repl. vol.). On the other hand, if an employer is a legally qualified workmen's compensation participant, employees may recover damages for work related injuries over and above workmen's compensation benefits only if the injury results from "the deliberate intention of his employer to produce such injury . . . ." W. Va.Code Ann. § 23–4–2 (1973 repl. vol.).

By providing in their employer's insurance contract that coverage should not apply during any period when the insured, though subject to workmen's

compensation coverage, failed to avail itself of the same, the parties obviously intended to exclude those lesser risks of damages from simple negligence. The damages for which the insured could become legally obligated to pay while a qualified self-insurer or member in good standing of the state workmen's compensation fund would be those resulting from its own deliberate intention to harm the employee. These are the only risks against which the employer's liability policy provided coverage.

Since it has been judicially determined that Korhumel, the insured, was neither a legally qualified self-insured nor a member in good standing of the West Virginia workmen's compensation fund, Fair v. Korhumel Steel & Aluminum Company, Inc., *supra*, no coverage existed under the employer's liability policy at the time the Fair claim arose.

Having determined this to be an exclusionary clause, and also having determined that by operation of that clause no policy coverage existed for the Fair claim, the Court must now determine whether INA, through its action with respect to the Fair claim, will be prevented from denying coverage under this policy.

It is the position of the insured that INA is estopped to deny coverage because, after receiving notice of those facts which ultimately led to a determination that Korhumel was not a properly qualified workmen's compensation participant, INA continued an unqualified defense of Fair's claim.

It is a well-settled statement of the law that the principles of estoppel and waiver do not operate to extend the coverage of an insurance policy after the loss has been sustained. Campbell v. Aetna Casualty and Surety Co., 211 F.2d 732 (4th Cir. 1954) (apparently applying W.Va. law). While there apparently exists no direct authority from the West Virginia Supreme Court of Appeals either in support of, or in opposition to, this statement, general authority indicates that the *Campbell* case represents the majority expression of those jurisdictions which have faced the question. Annot., 1 A.L.R.3d 1139 (1965). It is the opinion of this Court that the West Virginia court, if presented the opportunity, would follow this majority view.

To this general rule there exists one well-established exception. "[I]f a liability insurer, with knowledge of a ground of . . . noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of . . . noncoverage. In other words, the insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert such grounds." Insurance Company of North America v. Atlantic National Insurance Co., 329 F.2d 769, 775–76 (4th Cir. 1969) (applying Va. law). As with the general rule, this exception has found wide-ranging approval. Annot., 38 A.L.R.2d 1148 (1954). It is unquestionably a part of the law of our sister state of Virginia. *E. g.*, Dairyland Insurance Co. v. Hughes, 317 F.Supp. 928 (W.D.Va.1970) (applying Va. law).

An examination of the authorities makes it clear that a distinction exists between that class of cases in which the insurer has assumed an unconditional defense of a lawsuit against its insured, based on a noncovered risk, and those cases in which other actions taken by the insurer are asserted as a basis for estoppel to deny noncoverage.

Demonstrative of such is where the insurer has merely retained a premium or accepted policy renewals, Campbell v. Aetna Casualty and Surety Co., *supra;* or where claim forms and medical authorizations are requested by the insurer and furnished by the insured, Simmons v. Continental Casualty Co., 285 F.Supp. 997 (D.Neb.1968) (applying Ill. law) ; or

where the insurer issues a policy containing an age limitation to one whom he knows to exceed that age, Currie v. Occidental Life Insurance Co., 17 N.C. App. 458, 194 S.E.2d 642 (1973); or where the insurer's agent issues a policy with a good health proviso to a person whom the agent knows to be in ill health, Sharp v. Richmond Life Insurance Co., 212 Va. 229, 183 S.E.2d 132 (1971) the insurer will not be estopped to deny that claims presented are without the coverage provided by the policies. On the other hand, where the insurer has affirmatively assumed the defense of an action brought against the insured, without reservation of rights to deny coverage, the right to subsequently deny coverage is waived by implication and the insurer is estopped to deny that waiver.

Just as this Court believes that the well-settled rule with regard to waiver and estoppel not extending coverage is a part of the law of the State of West Virginia, the Court also believes this clearly defined exception to that rule would be applied by West Virginia's Supreme Court of Appeals, if given the opportunity to pass on the question.

■ As noted above, the exclusionary clause in the employer's liability policy here was clear and unambiguous. INA knew that Korhumel had no coverage under this policy if it was not a "legally qualified self-insurer nor a member in good standing in the State Fund in [West Virginia]." At a very early stage in the Fair case, INA was given notice of those facts which ultimately led to a judicial determination that Korhumel was neither a self-insurer nor a member in good standing on the West Virginia workmen's fund. Certain uncontroverted facts that appear from the record of the Fair case reveal the extent of INA's knowledge of circumstances underlying Korhumel's workmen's compensation coverage. The Court takes judicial notice of these facts, which are a part of its public records of prior litigation, closely related to the present case. Ellis v. Cates, 178 F.2d 791 (4th Cir. 1949).

■ The complaint in the case of Bernard D. Fair, Jr. v. Korhumel Steel and Aluminum Co., Inc., et al., Civ. Act. No. 69–6–W, was filed with the Clerk of this Court February 13, 1969. On March 24, 1969, Korhumel filed its answer to the complaint and joined a motion to dismiss therewith. This motion was based on the exclusivity of Fair's workmen's compensation remedy. Fair responded with his own motion to strike the motion to dismiss from the answer. In support of this motion, he alleged the facts underlying Korhumel's workmen's compensation coverage and maintained that, based upon those facts, Korhumel was not properly qualified under the West Virginia act.[1] On May 8, 1969, Fair

---

I. ANSWER TO AND MOTION TO STRIKE AS FRAUDULENT THE MOTION TO DISMISS OF KORHUMEL STEEL & ALUMINUM CO., INC.

The Plaintiff, Bernard D. Fair, Jr., for Answer to and Motion to Strike as Fraudulent the Motion to Dismiss of Korhumel Steel & Aluminum Co., Inc., says as follows:

. . . . .

2. He . . . says that the true facts are that said defendant, Korhumel Steel & Aluminum Co., Inc., after qualifying to do business in the State of West Virginia on the 20th day of November, 1964, did not elect to comply with the provisions of Chapter 23, West Virginia Code; (Workmen's Compensation Act) did not apply to the State Workmen's Compensation Commissioner to be a subscriber to the Workmen's Compensation Fund, did not furnish said Commissioner with a certificate from the Secretary of State showing that it had complied with all the requirements necessary to enable it legally to do business in this State and did not subscribe to said fund as required by Chapter 23, nor did the Workmen's Compensation Commissioner find as fact that the said defendant, Korhumel Steel & Aluminum Co., Inc., was of sufficient financial responsibility to insure the payment of compensation to injured employees and the dependents of fatally injured employees, whether in the form of pecuniary compensation or medical attention, funeral expenses or otherwise as provided in said Chapter 23, or that the said defendant, Korhumel Steel & Aluminum Co., Inc., was of sufficient financial responsibility and maintained its own benefit funds, or system of compensation, to which their employees are not required or permitted to contribute, or that the said defendant, Korhumel Steel & Aluminum Co., Inc., furnished bond or other security to insure such payments, as permitted by said Chapter 23.

served a set of interrogatories on Korhumel, the first twenty-six of which dealt with the facts of Korhumel's workmen's compensation coverage. Korhumel answered these setting forth again the facts surrounding its defective workmen's compensation coverage.

While these actions were being taken on behalf of Korhumel by INA's attorneys, the insurance carrier itself engaged in conduct indicating knowledge of the problems presented by Fair's suit. By letter dated March 11, 1969, a Mr. J. D. Reese, Assistant Manager, Claims Service, INA, acknowledged receipt of the suit papers in the Fair action as of February 27, 1969. In this letter, Mr. Reese noted the immediate problem of determining whether Fair's claim could be maintained against the insured. He also requested from the insured a complete copy of the workmen's compensation file on Fair's claim.[2] A reserve was set up to cover possible liability in Fair's case in the amount of $35,000. On July 28, 1969, this reserve was increased to $75,000. The notice of this reserve change, apparently prepared by employees of INA for entry in the company records, bears the following remark: "Legal questions as to whether workmen's compensation sole remedy."[3]

Despite all of this, INA continued to conduct the defense of the Fair action, without reservation of rights, from the date of its inception until March 9, 1973. On that date, after the Court of Appeals had ruled that Korhumel was not a properly qualified participant in the West Virginia Workmen's Compensation program, INA informed the insured of its willingness to continue its defense of the Fair case only under a reservation of rights to deny coverage.

Under the above-cited authority and this set of facts, this Court is of the opinion that INA has waived the noncoverage provisions of its employer's li-

---

2. INSURANCE COMPANY OF NORTH AMERICA

March 11, 1969

Fergeson Insurance Agency
Weirton, West Virginia
Attention: Mr. William Brogan, Manager

RE: National Steel Corporation
Bernard D. Fair, Jr.
D/E: 3/22/67

Dear Mr. Brogan:

This will acknowledge your personal delivery of the suit papers involved in the above captioned matter together with covering letter of February 27, 1969, from the insured's corporate attorneys. We have referred this matter to [a law firm] in Wheeling, West Virginia, for the defense and protection of the insured's interests.

There is, of course, the immediate question of whether or not the plaintiff can maintain his present cause of action against either or both of the two insured defendants. At any rate, as a self-insurer for Workmen's Compensation in the State of West Virginia I presume that your company already has a Workmen's Compensation file on this matter and I would appreciate your forwarding a complete copy of same at your very earliest convenience.

Yours very truly,
J. D. Reese
Assistant Manager
Claims Service

---

3. Defendant's Exhibit D, attached to the affidavit of Mr. F. W. Brogan, Manager, Corporate Insurance Department, National Steel Corporation. The notice of reserve change has a section captioned "Remarks." The following notation was entered therein:

"Suit. Legal questions as to whether workmen's compensation sole remedy. Fracture tibia with continuous partial disability. Now appears other defendant will be let out."

ability policy, and that it is now estopped by its unconditional defense of the Fair claim for an extended period from denying that coverage exists under the policy.

INA readily assumed the defense of the Fair action and carried it forward for almost four years, allowing National to labor under the assurance that INA intended an unqualified defense to the termination of that claim. Relying on this assurance, National turned the complete defense of the action over to the insurer. It must also be kept in mind that National was not free to embark on its own defense of the Fair lawsuit. Under the terms of the policy here, which National had every reason to believe were still in effect, the insured was bound to cooperate fully with the insurer in the defense of any claim.[4]

Although INA had extensive knowledge of the problems that existed with Korhumel's workmen's compensation coverage, it did not inform National of the possibility that policy coverage for the Fair claim might not exist. Now that the Court of Appeals has ruled that Korhumel's attempts at gaining self-insurer status were insufficient, National stands subject to common law liability, stripped of several important defenses. After having assumed an unqualified defense of the action over an extended period of time while having notice of a basis for noncoverage, the insurer cannot be allowed to simply walk away from its insured who now stands exposed to damages. The fact that National, in reliance on INA's assurances, declined to assume its own defense at a very critical stage of the Fair proceedings must be considered as sufficient to bind INA to

its implied waiver of the noncoverage provisions of the policy.

Turning next to the general liability policy, its terms insured against "damages, including damages for care and loss of services, because of personal injury, . . . sustained by any person or persons; . . . ." However, "[a]s a condition to the recovery of any loss under this policy, with respect to personal injury to or the death of any employee(s) arising out of and in the course of employment by the named insured, the named insured warrants that it has not and will not abrogate its common law defenses under any workmen's compensation law by rejection thereof, or otherwise." "In the event the named insured should, at any time during the policy period, abrogate such defenses, such insurance as is afforded by [this policy] with respect to such employee(s) shall automatically terminate at the same time."

This language is at least as plain as that discussed above with respect to the employer's liability policy. The insurance afforded by the policy for injuries to employees was to terminate at the time the insured abrogated its common law defenses by rejection of the state workmen's compensation law or *"otherwise."* Looking to the West Virginia Code, it appears that an employer who has elected not to pay premiums to the workmen's compensation fund, or who is in default in his premium payments, or who has not *"otherwise fully complied with the provisions"* of the West Virginia Workmen's Compensation act may be held liable for injuries to his employees, and, in an action brought by an injured employee against the employer, the

---

4.         CONDITIONS
7. Assistance and Cooperation of the Insured

The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in entering settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits or pro-

ceedings. The insured shall not, except at his own costs, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and other services at the time of the injury as are required by the workmen's compensation law.

defenses of the fellow-servant rule, assumption of risk, or contributory negligence may not be asserted. W.Va.Code Ann. § 23–2–8 (1973 repl. vol.). Thus, one may abrogate these common law defenses by failing to comply fully with the provisions of the West Virginia act. Failure of the employer to fully comply with the statutory provisions was clearly contemplated by the language of the policy when it stated that these defenses should not be abrogated by rejection of workmen's compensation coverage or *otherwise.* When Korhumel failed to comply adequately with the provisions of the act, this condition in the policy was breached. Following this breach, INA had the right to deny coverage of the Fair claim, or at least to question the coverage.

■ This is a condition limiting the liability of the insurer upon the occurrence of certain acts by the insured. A condition of this character, being for the benefit of the insurer, may be waived by it, or it may be estopped to rely upon that condition as a defense in an action on the policy. McKinney v. Providence Washington Insurance Co., 144 W.Va. 559, 109 S.E.2d 480 (1959). The waiver of such a condition may be either express or implied, a distinction recognized by the West Virginia Supreme Court of Appeals in the case of Peninsular Land Transportation & Manufacturing Co. v. Franklin Insurance Co., 35 W.Va. 666, 14 S.E. 237 (1891). There the Court stated that "a waiver is an intentional relinquishment of a known right, *or such conduct as warrants an inference of waiver of such right;* but where it appears that there was no such intent in fact, and no understanding on the part of the insured that the proofs were waived, so that he was not mislead, it will be held that there has been no waiver." *Id.* at 676, 14 S.E. at 241. (emphasis supplied). Absent express intent, a condition may be waived by such conduct on the part of the insurer as warrants an inference of waiver and an understanding on the part of the

insured that the condition is waived, so as to mislead him.

■ While an express waiver must be based upon consideration, Charleston Lumber Co. v. Friedman, 64 W.Va. 151, 61 S.E. 815 (1908), the implied waiver of a condition rests upon action of the insurer which would reasonably lead the insured to believe the condition waived, and reliance by the insured on that belief to his detriment.

The words "waiver" and "estoppel" have been used interchangeably with reference to conditions of insurance contracts, a use that has resulted in some confusion in interpretation of applicable legal principles. An examination of the West Virginia authorities would indicate that in the case of an implied waiver, the term "waiver by estoppel" is the most appropriate. As the Supreme Court of Appeals stated in syllabus point six in Muhleman v. National Insurance Co., 6 W.Va. 508 (1873): "A waiver, to be operative, must be supported by an agreement founded on a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting on performance of the contract or forfeiture of the condition." "There must be some act or declaration of the [insurer] . . ., to the [insured] which so affected the conduct of the latter to his injury as that it would be unjust now to permit the [insurer] to set up or have the benefit of the clause of the policy in question. It is not necessary . . . that the party should intend wilfully to mislead; but whatever may be the intent, if he makes such a representation as a sensible man would take to be true, and believe that it was meant he should act upon it, and he does so act, the party making the representation is precluded from contesting its truth." Stolle v. Aetna and Marine Insurance Co., 10 W.Va. 546 (1877) (citing Muhleman v. National Insurance Co., *supra*).

■ All of these elements are present in the instant case. The insurer, with

**522**

knowledge of facts constituting a possible breach of one of the policy conditions, commenced and continued an unconditional defense of the Fair claim for almost four years. During that time, Korhumel made no efforts at interposing its own defense and took no other steps to protect itself from a possible judgment in the Fair case. INA's actions clearly implied a waiver of the workmen's compensation condition in the general liability policy and indicated to the insured that any recovery in the Fair case would be insured against. In reliance on these actions, Korhumel abstained from the preparation of any independent defense of the claim. Once again, the fact that the insured was deprived of the opportunity to present its own defense through a crucial stage of the proceedings, a stage at which its ultimate exposure to a possible damage verdict was determined, is prejudice enough to prevent INA from now relying on the alleged breach of condition.

For these reasons, an order will follow finding that the Insurance Company of North America has waived its rights to deny coverage of the Fair claim under the employer's liability policy in effect between the parties; that the Insurance Company of North America is now, by reason of its unqualified defense of the Fair claim for a period of almost four years, estopped to deny that waiver; that the Insurance Company of North America has waived its right to rely upon the insured's breach of the condition in that policy relating to the abrogation of common law defenses by rejection of workmen's compensation coverage or otherwise to deny coverage of the Fair claim under the general liability policy in effect between the parties; that the Insurance Company of North America, by way of its unconditional defense of the Fair claim for a period of almost four years, is now estopped to deny that waiver; and since nothing further remains to be done in this civil action, dismissing and retiring the same from the docket of this Court.