## CIRCUIT COURT OF THE CITY OF CLIFTON FORGE

Jerry Wayne Alfred

v.

Consumers Life Ins. Co.

October 8, 1976

Case No. 208

BY JUDGE ROSCOE B. STEPHENSON, JR.

By this declaratory judgment proceeding Jerry Wayne Alfred seeks to have the court adjudicate that Consumers Life Insurance Company (the Company) is obligated to pay disability benefits under a policy of insurance.[1] The sole issue to be decided is whether Alfred had coverage under the policy of insurance for his disability.

On February 10, 1973, Alfred purchased an automobile from Motor Sales Corporation, in the City of Clifton Forge. At that time Bob May, then the general manager of Motor Sales, asked Alfred if he desired credit disability insurance, explaining that such insurance would pay the finance charges in the event the debtor became disabled. Alfred expressed an interest and May made inquiry as to his state of health. Alfred informed May that he had injured his back while working in Florida in 1969. May responded to the effect that if Alfred was able to work regularly at this time he should qualify for insurance. Alfred read and signed the application. Immediately above the signature line on the application appear these words: "I represent that I am in good health as far as I know and believe."

Thereafter the Company issued Policy No. 392046 (Plaintiff Exhibit A) which contains, *inter alia*, the following provisions:

---

[1] The right of petitioner to maintain a declaratory judgment suit is not challenged, but see *Liberty Mutual Insurance Co. v. Bishop*, 211 Va. 414, 177 S.E.2d 519 (1970).

"Injury" means bodily injury caused by an accident to the insured while this policy is in force which results directly and independently of all other causes in disability covered by this policy.

"Sickness" means sickness or disease contracted by the insured while this policy is in force which results in disability covered by this policy.

*Entire Contract; Changes*: This policy constitutes the entire contract of insurance, and all statements made by the creditor or by the individual debtors shall, in the absence of fraud, be deemed representations and not warranties. No change in this policy will be valid until approved by an executive officer of the insurer and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.

The medical history with respect to Alfred's back problems began on May 2, 1969, when his back was injured in an accident. Following the injury he was hospitalized on a number of occasions for treatment of his injured back. He continued to have low back pain thereafter. In December, 1971, he had "an acute flare-up of back pain." On January 6, 1972, he was seen and treated by a Dr. Boyer, an orthopedic surgeon in Danville. He again saw Dr. Boyer on January 13, 1972, at which time Dr. Boyer advised him to do only "supervisory work." The acute pain continued and the doctor again saw him on February 18, 1972. He continued to see doctors about his back throughout the year 1972. According to Dr. Boyer, "this guy was coming into the office every week or every two weeks saying, 'my back is killing me.' We were giving him injections and saying, 'look, we are going to have to do something (meaning have surgery), because you cannot go on with this amount of pain'."

Following the recommendation of surgery by his physician, Alfred received a letter on February 5, 1973, from Aetna Insurance Company which read:

Dear Mr. Alfred, Please be advised that we authorize treatment and/or further surgery by Dr. Alton F. Gross or by Dr. Robert H. Brumfield.

Following the Insurance Company's authorization, the doctors, themselves, authorized surgery on February 16, 1973. Alfred was ad-

mitted to the hospital on February 21, 1973, a myelogram was performed on February 22nd, and as a result of what it revealed, surgery was performed on February 27, 1973.

On February 10, 1973, (the date Alfred applied for the insurance policy in question) all of the foregoing facts respecting the condition of his back to that time were known by him.

Following the surgery, Alfred was totally disabled for a period of about eighteen months.

The only conflict in the evidence relates to how much Alfred told Bob May about his existing back trouble. However, for reasons stated later, a resolution of this conflict is not required.

Alfred contends that the Company impliedly waived the express exclusions in the insurance contract. He argues that the agent's knowledge of Alfred's previous back problems is imputed to the Company, and that the Company is estopped from relying upon these exclusions. The court disagrees.

In *Sharp v. Richmond Life Insurance Co.*, 212 Va. 229, 183 S.E.2d 132 (1971), the court said that "knowledge of its agent, imputed to the Insurance Company, may not be used to make a new contract for the parties covering risks specifically excluded under the policy," and that "the coverage of an insurance contract may not be extended by estoppel or implied waiver to include risks expressly excluded." 212 Va. at 233, 183 S.E.2d at 135.

Code § 38.1–361.1, enacted in 1966, provides:

> No insurer having issued a policy of accident and sickness insurance pursuant to the provisions of this article shall deny liability on any claim otherwise covered under such policy because of the existence of a disease or physical impairment or defect, congenital or otherwise, at the time of the making of the application for such policy, *unless it be shown that the applicant knew or might reasonably have been expected to know of such disease, impairment or defect.* (Italics supplied.)

The undisputed evidence shows that Alfred "knew or might reasonably have been expected to know" of his impaired back. He learned that his back surgery, which was performed seventeen days after he applied for insurance, had been authorized by a letter bearing a date five days before the application.

Since the insurance policy in question expressly excludes preexisting conditions and Alfred knew or might reasonably have been expected to know of his condition, Alfred did not have coverage for the claimed disability.

In reaching this conclusion the court rejects Alfred's contention that it follow the decision of the Supreme Court of South Dakota in the case of *Farmers Mutual Automobile Insurance Co.* v. *Bechard*, 122 N.W.2d 86, 1 A.L.R.3d 1124 (1963). This decision follows the minority view. *See* 1 A.L.R.3d 1150–51. *Sharp* v. *Richmond Life Insurance Company, supra,* is controlling and is in accord with the majority view. *See* 1 A.L.R.3d 1147–50.