608 So.2d 1135 (1992)
Willie J. PACE
v.
FINANCIAL SECURITY LIFE OF MISSISSIPPI.
No. 07-CA-59553.
Supreme Court of Mississippi.
June 3, 1992.
Rehearing Denied December 3, 1992.
*1136 Thomas J. Lowe, Jr., Jackson and Peter K. Smith, Quitman, for appellant.
Mark C. Carlson, McCoy Wilkins Stephens & Tipton, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and PITTMAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Willie J. Pace filed a complaint in the Circuit Court of Wayne County seeking to recover actual damages on a credit disability insurance contract and punitive damages for refusal to pay the amount claimed. The lower court granted partial summary judgment in favor of Financial Security Life of Mississippi on the issue of punitive damages and conducted an evidentiary trial on the contract issue. At the close of Pace's case, the lower court granted a directed verdict in favor of Financial Security Life of Mississippi (FSLOM). Pace has appealed and presents the following issues for decision by this Court:
I. WHETHER PRE-EXISTING CONDITION EXCLUSIONS ARE VALID, AND IF SO, WHETHER ESTOPPEL MAY BE USED TO AVOID THEM.
II. WHETHER PUNITIVE DAMAGES MAY BE AWARDED WHERE AN INSURANCE COMPANY DENIES A CLAIM BASED ON AN INVALID REASON WHEN IT ALSO HAD ANOTHER VALID REASON.

FACTS
Pace was no stranger to credit life and disability policies, since she testified that she had always requested such coverage when borrowing money in the past. She was not an ignorant person, having a two-year college degree and, subsequently, thirty-two hours of college education. In her position, buying the insurance was the prudent thing to do, for she was not the model of good health. Though only forty (40) years old at the time, Pace carried 205 pounds on her five-foot, five-inch frame. She had been under the care of Dr. Arthur Woods in Waynesboro since November of 1984 for symptoms she described as shortness of breath, arthritis and limited ability to walk. Dr. Woods characterized her condition as severe sarcoidosis, congestive heart failure, pulmonary fibrosis and seizure disorder.
On January 28, 1985, Pace dealt with Tony Chapman, Vice-President of the Bank of Waynesboro, concerning her loan. FSLOM and the Bank of Waynesboro had an agreement whereby FSLOM agreed to underwrite credit life and credit disability insurance on loans made by the bank. In effect, the loan officers at the bank wore two hats; they were agents for the insurance company as well as bankers. The bank received fifty (50) percent of the premiums collected for selling the policies, as well as the comfort of knowing that their loans would be paid off in the event fortune frowned on their customers. Although Chapman was not the general agent authorized by the bank, he had received training in selling the insurance and was authorized by the bank and FSLOM to *1137 take the applications for insurance from the customers.
Pace testified at the trial that she asked Chapman for the credit life and disability coverage, as she always did when borrowing money. She wanted it, she said, to protect her credit in case something happened to her. She stated that, had she been unable to obtain the coverage, she would not have taken out the loan. Pace testified that she had never filled out an application, since, according to her, she never saw an application. At trial, however, the parties stipulated that she had received a copy of the application. Although she recognized her signature on the credit life application, she testified that she did not know how it got there. She said that Chapman did not ask her any questions about her health, which she considered good at the time; that Chapman did not read the policy and exclusions to her; and that she did not ask him any questions about the insurance. Pace did state that Chapman readily answered all the other questions which she did ask him. Apparently the two had a cordial meeting. Afterwards, they signed papers at the desk of Emma Sumrall, Chapman's secretary.
Chapman's testimony about the meeting was substantially similar with a couple of notable exceptions. He did not remember Pace specifically asking for the disability coverage. He stated that he always tried to sell it when making loans and that he had asked Pace if she wanted it. He further stated that although he did not read the entire policy to Pace, he did explain the pre-existing exclusion clause to her.
The application for insurance consisted of three (3) pages. The first contained general information about the insured and the amount of coverage applied for. The disability portion of the insurance provided for a monthly benefit of $212.15, the amount of Pace's payments on her loan. This policy cost Pace $317.52 for coverage over the thirty (30) months of her loan.
The second page of the application contained a "certificate" to be signed by the insured, if the disability coverage provided for payments of over $100 per month. It contained a space for the insured to list all illnesses, disease or accidents for which the insured had been treated within the last year, which was left blank. Following this space was a certification that the insured had read the application and given correct answers to the questions on the application, with a space to be signed and dated by the insured. The signature, "Willie J. Pace" appeared, but was not dated.
The third and final page was headed "CERTIFICATE OF INSURANCE." It provided that if FSLOM found the applicant to be uninsurable within ninety (90) days of the application, the application could be denied. It then set out the terms of the life insurance and disability insurance coverages. The disability coverage section was set out in three short paragraphs, the second of which read:
Exceptions: The disability benefit described above is not payable if total disability is caused or contributed by; (1) injury which was intentionally inflicted on the Insured Debtor by himself; (2) pregnancy, childbirth, or any complications thereof; (3) disease, injury or condition of health which manifested itself to the insured by requiring medical diagnosis or treatment within the six months preceding the taking of the application for insurance and which caused loss within six months following the effective date of coverage, provided, however, that disability commencing thereafter resulting from such illness shall be covered; (4) nervous or mental disease or disorder, alcoholism, or drug addiction.
The parties stipulated that Pace became permanently and totally disabled within the meaning of the policy on May 23, 1985. At that time, Pace was already delinquent on her loan payments. She obtained the necessary claim forms from the bank and filed a claim with FSLOM dated September 25, 1985. In response, Pace received a letter from Myles A. Frank, President of FSLOM, denying her claim on the basis that she omitted medical information which should have been on the application, and further voiding the coverage and refunding the *1138 premium. Subsequently, on May 12, 1986, FSLOM notified Pace that the claim actually was being denied based on the pre-existing condition exclusion contained in the policy.
Pace responded by filing suit on June 9, 1986, seeking damages under the insurance contract as well as punitive damages for wrongful denial of her claim. In her response to FSLOM's motion for summary judgment, Pace admitted that the reason FSLOM denied her claim was the pre-existing condition clause. The circuit court granted the motion for summary judgment on the punitive damages issue, but allowed the case to go to trial on the contract issue. However, after Pace presented her case, the court granted FSLOM's motion for a directed verdict.

LAW

I. and II.
This Court conducts a de novo review of the record on appeal from a grant of a motion for summary judgment. Short v. Columbus Rubber and Gasket Co., 535 So.2d 61, 63 (Miss. 1988). In Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983), which first interpreted Rule 56, the standard for the trial courts to use in considering a motion for summary judgment was stated:
The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.
Brown, at 363. See also, Lovett v. Anderson, 573 So.2d 758, 760 (Miss. 1990); Pearl River Cty. Bd. v. South East Collections, 459 So.2d 783, 785 (Miss. 1984); Pittman v. Home Indem. Co., 411 So.2d 87, 89 (Miss. 1982) (citing Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975).
This Court conducts a de novo review of motions for directed verdict just as it does with motions for summary judgment. If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted. Pittman, 411 So.2d at 89.
The first issue presented to this Court is whether pre-existing condition exclusions are valid and, if so, whether estoppel may be used to avoid them.
We note again that on May 12, 1986, FSLOM notified Pace that the claim actually was being denied based on the pre-existing condition exclusion contained in the policy. Pace's answer to FSLOM's motion for summary judgment admitted that FSLOM's reason for denial of her claim was the pre-existing condition exclusion. That answer is binding on her. Sears, Roebuck & Co. v. Devers, 405 So.2d 898 (Miss. 1981). In Devers, there was some confusion as to whether the plaintiff was proceeding on a theory of negligence or assault and battery. The plaintiff's attorney assured the court that the theory was strictly negligence, and this Court considered, in part, whether that assertion by the attorney was binding. The Court found that the party was bound by the statement of the attorney and quoted from 7A C.J.S. Attorney and Client, § 205(a).
An attorney employed for purposes of litigation has the general implied or apparent authority to enter into such stipulations or agreements, in connection with the conduct of litigation, as appear to be necessary or expedient for the advancement of his client's interests or to accomplishment of the purpose for which the attorney was employed.
405 So.2d at 900.
Pace contends that the pre-existing condition clause of the policy should not be upheld as a matter of public policy. However, the public policy of Mississippi has been established by statutes enacted by the Mississippi Legislature and by case law of this state. Mississippi Code Annotated *1139 § 83-53-23 (Supp. 1990) (effective July 1, 1987) expressly recognizes the use and validity of pre-existing condition clauses in credit disability insurance policies. The purpose of the statute is to regulate the rates that insurance companies may charge for such insurance. In part, the statute states that
... (4) the foregoing disability rates are considered to produce reasonable benefits in relation to premiums only if: ... (b) Coverage does not contain any exclusions except disability resulting from ... pre-existing illness ... which the debtor either: (i) knew the existence of such illness, disease or condition on the effective date, or (ii) received medical advice, consultation or treatment during the twelve-month period immediately preceding the effective date of the debtor's coverage.

On May 12, 1986, when FSLOM notified Pace that the claim was actually being denied based on the pre-existing condition exclusion contained in the policy, the policy still remained a valid contract. Likewise, the contract was still in effect on June 8, 1986, when suit was filed by Pace and defense to the suit was based upon the exclusion contained in the policy. The pre-existing clause on Pace's certificate of insurance provided that the disability benefit is not payable if total disability is caused or contributed to by:
(1) disease, injury or condition of health which manifested itself to the insured by requiring medical diagnosis or treatment;
(2) within the six months preceding the taking of the application for insurance; and,
(3) which caused loss within six months following the effective date.
Disability commencing thereafter resulting from such illness shall be covered.
In the case at bar, Pace (1) had been treated by Dr. Arthur Woods for the health condition since November 1984, within six (6) months preceding taking of the application on January 28, 1985, (2) which caused loss on May 23, 1985, within six (6) months following the effective date.
According to the policy, if the condition manifested itself within six (6) months prior to taking the application for insurance and caused loss more than six (6) months after the effective date of the policy, then the exclusion would not apply. On the other hand, if the condition did not manifested itself within six (6) months preceding the taking of the application but had caused loss within six (6) months after the issue date of the policy, the exclusion would not apply and the benefits would have been payable.
In Ford Life Ins. Co. v. Shannon, 328 So.2d 342 (Miss. 1976), the question was presented "did the Insurer waive its defenses by failing to cancel the policy and refund the premium when it denied Shannon's claim?" This Court answered in the negative and noted that "all or nearly all total benefit policies insure only against disability or accident contracted or occurring after a certain date." The Court further stated that "there is nothing inconsistent in continuing to accept premiums while denying liability for a loss not covered by the policy." Id., at 344.
Massie v. Washington Fidelity Nat. Ins. Co., 153 Miss. 433, 121 So. 125 (1929) involved a disability policy with a provision that only accidents or illnesses occurring more than 30 days after the policy was issued were covered. Massie admittedly became ill within the 30 days, but requested benefits nonetheless. He claimed that the company should be estopped from denying benefits since it did furnish him with claim forms in response to his request for benefits. This Court disagreed, stating:
The policy plainly stipulated that the appellee undertook alone to insure the appellant against illness beginning after 30 days from the date of the policy. If appellant's position be sound, it would mean that the court would have the right to make a contract for parties that they never made for themselves."
Id., 121 So. at 126-127.
In Sharp v. Richmond Life Ins. Co., 212 Va. 229, 183 S.E.2d 132 (1971), the insured took out a credit disability policy in conjunction with a loan. The banker/agent he *1140 dealt with knew the insured and knew of his prior existing condition of brain tumors, yet still issued a credit disability policy. When the insured later became disabled as a result of the brain tumor, the Supreme Court of Virginia upheld the denial of benefits based on the pre-existing condition clause. The same argument on estoppel was made in the case, to which the Court responded, "this knowledge of its agent, imputed to the Insurance Company [sic], may not be used to make a new contract for the parties covering risks specifically excluded under the policy" (citations omitted), and further that, "the coverage of an insurance contract may not be extended by estoppel or implied waiver to include risks expressly excluded" (citations omitted). Id., 183 S.E.2d at 135.
Life & Casualty Ins. Co. of Tennessee v. Nicholson, 246 Ark. 570, 439 S.W.2d 648 (1969), reaches the same conclusion. There, the insured became blind and claimed benefits on an industrial accident policy. The policy did not cover pre-existing conditions, and all of the medical evidence indicated that the problem had begun to manifest itself before the policy was taken out. The insured's mother insisted that she had told the insurance agent about the condition and, of course, that assertion was the foundation of the estoppel claim. The Supreme Court of Arkansas dismissed the claim, stating
the doctrines of waiver and estoppel, based upon the conduct or action of the insurer, cannot be used to extend the coverage of an insurance policy to a risk not covered by its terms or expressly excluded therefrom (citations omitted). This is not a case where a forfeiture is attempted by the insurance company but is a question as to the extent of the coverage of the policy. Consequently, there is no support for a finding of waiver.
Id., 439 S.W.2d at 651. See also Weber v. Union Life Ins. Co., 394 S.W.2d 565 (Mo. Ct. App. 1965); Reserve Life Ins. Co. v. Ramsey, 98 Ga. App. 732, 106 S.E.2d 820 (Ga.Ct.App. 1958).
Southern United Life Ins. Co. v. Caves, 481 So.2d 764, involved credit life insurance policy taken out at the same time Caves took out a loan with the First State Bank of Waynesboro. The only health-related question asked was whether the applicant had taken a physical examination for his employment, to which Caves truthfully answered that he had. Southern United denied the claim based on the insurable health provision in the policy. Although the case is similar in facts to the case at bar, it is distinguished from the present case in that Southern United never, throughout the course of the case, made an issue of the pre-existing condition clause. They chose to rest on their assertion that no contract of insurance ever existed due to the insurable health clause.
We are of the opinion that in the case at bar, there was a valid contract in effect with a valid disability exclusion and that FSLOM was not estopped from pursuing the exclusion as a defense.[1] Therefore, the judgment of the lower court must be, and is, affirmed. Since, that issue is dispositive of the case, the issue of punitive damages will not be addressed.
AFFIRMED.
HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
DAN M. LEE, P.J., concurs in results only.
McRAE, J., dissents.
NOTES
[1] Pace's argument relies heavily on Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172 (Miss. 1990). However, Pace fails to recognize the critical distinction between Andrew Jackson and her case. In Andrew Jackson, the question was whether a valid policy of insurance was ever issued. There, as in the case sub judice, we held that a valid policy was indeed issued. Here, however, the additional question is: "What is the scope of the coverage?" It is on this question that Pace's claim fails because it falls within the valid pre-existing condition exclusion. Nothing in this opinion should read to modify or weaken the holding in Andrew Jackson.