807 So.2d 1262 (2001)
Evelyn FENNELL, Individually and on behalf of the Heirs at Law of Aurelious Fennell, Deceased, Appellant,
v.
Lawrence STEWART, M.D., Appellee.
No. 2000-CA-00127-COA.
Court of Appeals of Mississippi.
August 14, 2001.
Rehearing Denied November 6, 2001.
Certiorari Denied February 21, 2002.
*1263 Isaac K. Byrd Jr., Jackson, Robert George Clark, III, Hiawatha Northington, II, Attorneys for Appellant.
Lisa L. Williams, Jackson, Attorney for Appellee.
EN BANC.
MYERS, J., for the court:
¶ 1. Mrs. Evelyn Fennell, individually and on behalf of the heirs at law of Mr. Aurelious Fennell, appeals the decision of the Pike County Circuit Court directing a verdict in favor of Dr. Lawrence Stewart. The sole issue presented is whether there was a material issue of fact in dispute that made the grant of a directed verdict improper. Finding that there was, we reverse and remand.

FACTS
¶ 2. On or about August 15, 1991, Mr. and Mrs. Fennell visited Dr. Stewart because Mr. Fennell had been losing his voice in the several months prior. After examining Mr. Fennell, Dr. Stewart scheduled a biopsy. The biopsy was performed on August 26. On that same day, Dr. Stewart informed Mr. Fennell and his family that he had cancer. The next day, a pathology report on the biopsy revealed that Mr. Fennell did not have cancer after all. On August 29, Mr. and Mrs. Fennell returned to Dr. Stewart's office, at which time Dr. Stewart informed them that Mr. Fennell did not have cancer.
¶ 3. Mr. Fennell subsequently developed cancer, and he filed suit on September 5, 1997, against Dr. Stewart and several other medical providers. The complaint alleged that Dr. Stewart failed to properly diagnose and treat Mr. Fennell's cancer and that such failure resulted in injury to Mr. Fennell. Mr. Fennell passed away as a result of his cancer before trial began, and his wife was substituted as plaintiff in the subject action. Summary judgment was granted to all defendant's except for Dr. Stewart, and the case against Dr. Stewart proceeded to trial on January 10 and 11, 2000. It is undisputed that Dr. Stewart informed Mr. Fennell that he if he *1264 did not stop dipping tobacco he would likely develop cancer. What remains in dispute, however, is whether Dr. Stewart advised Mr. Fennell on August 29 that he could develop cancer regardless of whether or not he stopped using tobacco and that he should return to Dr. Stewart's office for a follow-up examination within six months. Mr. Fennell stated in his deposition that Dr. Stewart never informed him of the need for a follow-up visit or sent a card reminding him to come in for such a visit. Mrs. Fennell testified to the same. The Fennells both stated that Dr. Stewart never told them that cancer could develop even if Mr. Fennell stopped using tobacco.
¶ 4. Dr. Stewart testified that he did tell Mr. Fennell to make an appointment for a follow-up examination within six months. Dr. Stewart's office records presented at trial indicated that Dr. Stewart did request that Mr. Fennell return to Dr. Stewart's office for a checkup within six months of the August 29 conference. Those records also contained a notation that a standard card had been sent to Mr. Fennell on February 6, 1992, reminding him to schedule an appointment with Dr. Stewart's office.
¶ 5. Dr. Larry Milner of Northbrook, Illinois, testified as an expert witness for the plaintiffs. Dr. Milner testified that, in order to meet the appropriate standard of care, Dr. Stewart must have adequately informed Mr. Fennell that although the biopsy showed that the lesion was benign, there was still a possibility that cancer could be present or could develop. In Dr. Milner's opinion, it was not adequate for Dr. Stewart to just request that Mr. Fennell schedule a follow-up appointment and warn him to stop smoking. Rather, Dr. Milner asserted, it was necessary for Dr. Stewart to explain to Mr. Fennell that there was a strong possibility that cancer could develop even if he were to cease all use of tobacco products and that the purpose of the follow-up appointment was to make sure that no cancer was present. Dr. Milner further testified that, in his opinion, had the patient been adequately notified of the seriousness of his condition, and had a follow-up examination been performed, such an examination would have shown cancer to exist, and the cancer could have been treated.
¶ 6. During the cross-examination of Dr. Milner, counsel for the defendant presented Dr. Milner with a copy of Dr. Stewart's office record indicating that Dr. Stewart had recommended a follow-up visit within six months of the initial visit. Dr. Milner indicated that if such a notation was made in the office records, he would assume it to be true. Dr. Stewart's attorney also noted that Mr. Fennell was diagnosed with and subsequently died of spindle cell cancer. Dr. Milner conceded that such a cancer was aggressive and fast-growing in nature.
¶ 7. Upon conclusion of Dr. Milner's testimony, Dr. Stewart's attorney moved for a directed verdict. In support of this motion, Dr. Stewart's attorney asserted that Dr. Milner had admitted that by telling Mr. Fennell that if he did not stop dipping he would get cancer and that he should return for a follow-up visit within six months, Dr. Stewart met the standard of care. Mrs. Fennell's attorney rebutted that Dr. Milner had testified that the standard of care would be met only if Dr. Stewart adequately informed Mr. Fennell that the condition of his throat could be precancerous, and that the follow-up visit was necessary to ensure that the lesion had not become malignant. The trial judge sustained the motion for directed verdict, finding that Dr. Milner admitted that Dr. Stewart had appropriately cautioned the Fennells. This appeal followed.

DISCUSSION

I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION *1265 FOR DIRECTED VERDICT AT THE CLOSE OF PLAINTIFF'S EVIDENCE.
¶ 8. We employ a de novo standard when reviewing the grant of a motion for directed verdict. Pace v. Financial Sec. Life of Mississippi, 608 So.2d 1135, 1138 (Miss.1992). If we find that the evidence favorable to the non-moving party and all reasonable inferences drawn therefrom present a material question of fact upon which reasonable jurors could disagree, we will not affirm the decision of the trial court. Id.
¶ 9. Mrs. Fennell asserts that the trial court erred in granting Dr. Stewart's motion for directed verdict because whether Dr. Stewart informed Mr. and Mrs. Fennell that the purpose of his return visit was to ensure that the lesion had not turned malignant remains an unresolved material question of fact. We agree. Dr. Stewart argues that the directed verdict was properly rendered because Mrs. Fennell's expert witness, Dr. Milner, admitted that Dr. Stewart informed her and her husband that if he did not stop smoking, he would get cancer and advised Mr. Fennell to return for a follow-up visit within six months. However, Dr. Milner was in no position to, nor did he, make any admission as to whether Dr. Stewart had adequately informed the Fennells that the purpose of the follow-up visit was to ensure that the lesion had not developed into cancer. Dr. Milner was not called upon to resolve the question of what Dr. Stewart actually told the Fennells. Rather, he was put on the stand to give his opinion as to what Dr. Stewart should have told the Fennells. Mr. Fennell stated in his deposition that Dr. Stewart did not tell him that the purpose of the follow-up visit was to ensure that cancer had not developed. Mrs. Fennell testified to the same at trial. Drawing all reasonable inferences from this evidence, we find that what Dr. Stewart actually told the Fennells remained a disputed question of material fact. Thus, the directed verdict was inappropriate.
¶ 10. Dr. Stewart also counters that Mrs. Fennell failed in her case in chief to show causation between Dr. Stewart's actions and her husband's death as is required under Mississippi law. However, Dr. Milner testified that Dr. Stewart had not met the standard of care, and that if he had, Mr. Fennell could have been saved. This testimony also presented a question of material fact that would preclude a directed verdict.
¶ 11. For the reasons, stated above, we find that the trial court erred in rendering a directed verdict in favor of the appellee. Accordingly, we reverse and remand.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY GRANTING A DIRECTED VERDICT IN FAVOR OF THE APPELLEE IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, P.J., BRIDGES, IRVING and CHANDLER, JJ., CONCUR. McMILLIN, C.J., dissents with Separate Written Opinion joined by SOUTHWICK, P.J., and THOMAS, J. LEE, J. not participating.
McMILLIN, C.J., dissenting:
¶ 13. I dissent. The appellant's theory of the case was that Dr. Stewart, in 1991, failed to inform Aurelious Fennell of the need to return for a follow-up examination to continue to monitor his throat condition, and that, as a result, his throat cancer that developed after Dr. Stewart's treatment was not detected until it was in its advanced stages. Despite this theory of liability, competent evidence was presented *1266 during the course of the trial in the form of notations in Dr. Stewart's records and testimony from an employee of his office that Fennell had been informed of the need to return for a follow-up visit in six months and that a reminder card was mailed out at the appropriate time to remind him of the doctor's recommendation.
¶ 14. Even the appellant's own expert, Dr. Milner, in attempting to define the standard of care, conceded that the entries in Dr. Stewart's file in all likelihood accurately reflected the facts. (See Samuels v. Mladineo, 608 So.2d 1170, 1182 (Miss. 1992), for a discussion of the probative value of contemporaneous medical notes.) Despite this concession, Dr. Milner attempted to find a deviation from the standard of care based on his perceptionnot supported by any competent evidence since Mrs. Fennell persisted in her assertion that Dr. Stewart did not inform her husband of a need to return for further monitoringthat Dr. Stewart did not put enough stress on the importance of Fennell's returning for follow-up care. Dr. Milner offered the view that, had Dr. Stewart more forcefully stressed Fennell's need for a follow-up examination, then certainly Fennell would have followed the advice and, thus, his cancerous condition would have been detected at an earlier and more treatable stage.
¶ 15. I would not create a rule that would permit a patient to (a) disregard a doctor's recommended course of treatment on the sole basis that the doctor was not emphatic enough in impressing on the patient the importance of compliance, yet (b) maintain a malpractice action when the failure to follow the advice results in adverse medical consequences. A patient submitting to a physician's care ought to have the responsibility to follow the doctor's directives whether or not they are delivered with attendant warnings of the dire consequences of ignoring them in order to heighten the likelihood that the patient will comply.
SOUTHWICK, P.J. and THOMAS, J., join this Separate Written Opinion.